No. 26-1033

# United States Court of Appeals
# for the Federal Circuit

PARKERVISION, INC.,

*Plaintiff-Appellant,*

v.

QUALCOMM INCORPORATED, QUALCOMM ATHEROS, INC.,

*Defendants-Appellees.*

*Appeal from the United States District Court for the Middle District of Florida*
*Case No. 6:14-CV-00687-PGB-LHP, Judge Paul G. Byron*

## OPPOSED MOTION TO DISMISS FOR LACK OF JURISDICTION OF DEFENDANTS-APPELLEES

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST
MATTHEW M. WERDEGAR
SOPHIE HOOD
ANJALI SRINIVASAN
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

COOLEY LLP
MATTHEW BRIGHAM
DENA CHEN
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 843-7400
Dchen@cooley.com
Mbrigham@cooley.com

COOLEY LLP
EAMONN GARDNER
1144 15th Street, Suite 2300
Denver, CO 80202-2686
Telephone: (720) 566-4000
Facsimile: (720) 566-4099
Egardner@cooley.com

*Attorneys for Defendants-Appellees*
*QUALCOMM INCORPORATED, QUALCOMM ATHEROS, INC.*

3136535

## I.    INTRODUCTION

This appeal should be dismissed for lack of appellate jurisdiction. There is no final judgment. Appellant ParkerVision, Inc. ("ParkerVision") obtained only partial judgment on a subset of asserted patent claims, while other asserted patent claims from the *same* patent-in-suit and cause of action remain pending in the district court and ripe for resolution. The district court's disposition of less than all asserted patent claims in a patent-in-suit is not an "ultimate disposition of an individual claim" and cannot serve as a basis for appellate jurisdiction under Federal Rule of Civil Procedure 54(b). *W.L. Gore & Assocs., Inc. v. Internal Med. Prosthetics Research Assocs., Inc.*, 975 F.2d 858, 861-62 (Fed.Cir.1992) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). The Court should dismiss this appeal for lack of appellate jurisdiction and allow the parties to proceed towards trial and a final judgment on all remaining claims. Otherwise, contrary to the letter and spirit of Rule 54(b), this Court and the parties will be forced to consider piecemeal appeals of related patent claims from the same patent asserted against the same Qualcomm products.

Appellees Qualcomm Incorporated and Qualcomm Atheros, Inc. (collectively, "Qualcomm") thus move this Court under Federal Rule of Appellate Procedure 27(a) and Federal Circuit Rule 27(f) to dismiss this appeal at Federal Circuit Dockets 2026-1033 and 2026-1035. Pursuant to Federal Circuit Rule

1

3136535

27(a)(2), counsel for Qualcomm notified counsel for ParkerVision that it would file this motion to dismiss for lack of jurisdiction.  Opposing counsel indicated that the motion is opposed.

## II.    STATEMENT OF FACTS

This patent case involves radio frequency ("RF") technology.  ParkerVision contends that Qualcomm's products infringed various "receiver" patent claims and various "transmitter" patent claims.  Of the eleven patents originally asserted by ParkerVision, two remain at issue in the case: U.S. Patent No. 6,091,940 (the "'940 patent"), the claims of which pertain to both receiver and transmitter technology, and U.S. Patent No. 7,218,907 (the "'907 patent"), the claims of which pertain to receiver technology.

Count I of ParkerVision's operative complaint alleges "Infringement of the '940 Patent."[1]  Ex. A (First Am. Compl.) ¶¶ 26, 42–58, ECF No. 26.[2]  ParkerVision accuses Qualcomm of infringing claims 24 and 331 of the '940 patent, which are directed to a communication apparatus with transmitting and receiving subsystems (referred to in the district court's Rule 54(b) order as the "Receiver Claims," despite

---

[1] Count I is the only count that references the '940 patent.  Although the partial judgment from which ParkerVision appeals implicates both remaining patents, this Motion addresses only the jurisdictional issues arising from the Court's entry of partial final judgment with respect to a subset of the '940 patent's asserted claims.

[2] All "ECF No." references are to the United States District Court for the Middle District of Florida docket at 6:14-cv-00687-PGB.

2

3136535

also involving transmitter technology, and at issue in the present appeal), and claims 25, 26, 368, and 369 of the '940 patent, which are directed to a method for communicating using related transmitter technology (referred in the district court's Rule 54(b) order as the "Transmitter Claims" and currently stayed before the district court).  *See* Ex. B (Joint Pre-Trial Statement), at 13–16, ECF No. 612; Ex. C (Order re claim construction), at 3 n.3, ECF No. 804.  ParkerVision accuses the same Qualcomm products of infringing all the asserted claims of the '940 patent—claims 24 and 331 and claims 25, 26, 368, and 369.  Ex. B, at 13–16.

## III.    PROCEDURAL BACKGROUND

This Court has addressed the parties' various disputes in several proceedings. *E.g.*, *ParkerVision, Inc. v. Qualcomm Inc.*, 621 F. App'x 1009, 1011 (Fed. Cir. 2015); *ParkerVision, Inc. v. Qualcomm Inc.*, 627 F. App'x 921, 922 (Fed. Cir. 2015); *ParkerVision, Inc. v. Qualcomm Inc.*, 903 F.3d 1354, 1357 (Fed. Cir. 2018); *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1349 (Fed. Cir. 2024).  The complete procedural history of this litigation is voluminous, but only the most recent events are pertinent to this motion to dismiss for lack of jurisdiction.

In *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345 (Fed. Cir. 2024) (decided September 6, 2024), this Court vacated the district court's entry of summary judgment, reversed the district court's grant of *Daubert* motions relating

3

3136535

to ParkerVision's validity and infringement experts, and remanded for further proceedings. Notably, the Court's decision stated that "the district court erred by failing to assess claim scope by conducting claim construction according to the process we set out in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc)." *Id*. at 1357.

Thereafter, as directed by this Court, the district court conducted further claim construction proceedings and, on May 29, 2025, issued an order construing certain terms within the asserted claims of the '907 patent and within claims 24 and 331 of the '940 patent. Ex. C, at 22. In a 22-page order, the district court analyzed the parties' competing positions and ultimately adopted Qualcomm's proposed construction of the two disputed terms. *Id.* at 17, 21–22.

Based on the district court's claim constructions, the parties stipulated to non-infringement of the asserted claims of the '907 patent and claims 24 and 331 of the '940 patent, requesting that the district court enter partial summary judgment in Qualcomm's favor on those claims. *See* Ex. D (Unopposed Mot. Partial Summ. J.), ECF No. 809. The parties expressly *excluded* asserted claims 25, 26, 368, and 369 of the '940 patent from the request. *Id.* at 3.

Two weeks later, ParkerVision moved for partial final judgment under Rule 54(b), requesting that the district court's summary adjudication of claims 24 and 331 of the '940 patent be certified for immediate appeal, while claims 25, 26, 368, and

4

369 of the same '940 patent be severed and stayed before the district court. *See* Ex. E, ECF No. 811. Qualcomm opposed the motion, citing the lack of finality on ParkerVision's '940 patent cause of action (Count I), as well as the existence of just reasons to delay an appeal until all remaining asserted claims are resolved, including: the near inevitability of another post-trial appeal addressing the validity of the same patent and infringement of the same accused products; the further delay in finally resolving this dispute that this interim appeal will cause; and the growing risks of witness unavailability and fading memories more than two decades after the events underlying ParkerVision's infringement claims. Ex. F, ECF No. 814.

On August 21, 2025, the district court granted the parties' joint stipulation of non-infringement, entering partial summary judgment in Qualcomm's favor as to the '907 patent and claims 24 and 331 of the '940 patent. Ex. G (Order re partial summary judgment), at 3, ECF No. 815. On the same day, the district court issued an endorsed order on the docket *sua sponte* permitting ParkerVision leave to file a reply "addressing Qualcomm's contention that a Final Judgment cannot be entered as to the Receiver Claims while the Transmitter Claims remain."[3] Ex. H, at 1, ECF No. 816. ParkerVision filed its reply on September 4, 2025. Ex. I, ECF No. 818.

---

[3] By default, the Local Rules of the Middle District of Florida do not allow movants to file a reply as a matter of right, requiring them to first seek leave to file a reply. ParkerVision had not requested leave to file a reply in support of its Rule 54(b) motion.

3136535

On October 2, 2025, the district court granted ParkerVision's Rule 54(b) motion, certifying its earlier partial summary judgment for immediate appeal. Ex. J (Order re Rule 54(b) judgment), at 5–6, ECF No. 820. The district court also acknowledged, however, that this Court "can quickly dismiss the appeal if it determines the Receiver Claims and the Transmitter Claims [of the '940 patent] constitute a single cause of action such that certification is improper." *Id.* at 4-5. ParkerVision filed its notice of appeal shortly thereafter.

## IV.   LEGAL STANDARD

This Court's jurisdiction ordinarily extends only to a "final decision of a district court." 28 U.S.C. § 1295(a)(1). Generally, in a case involving more than one claim, there is no final decision until a judgment is entered adjudicating all of the claims." *Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1357 (Fed. Cir. 2003). Rule 54(b) provides a limited exception to this general rule, where: (1) multiple claims for relief or multiple parties are involved; (2) at least one claim or the rights and liability of at least one party is finally decided; and (3) the district court finds that there is no just reason for delaying an appeal. *See Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.* 841 F.3d 1334, 1347 (Fed. Cir. 2016).

"The requirement of finality is a statutory mandate and not a matter of discretion." *W.L. Gore & Assocs.*, 975 F.2d at 862. Accordingly, this Court reviews the finality of a judgment under Rule 54(b) *de novo*. *See Nystrom v. TREX Co.*, 339

6

3136535

F.3d 1347, 1350–51 (Fed. Cir. 2003). "Whether an order is sufficient to confer appellate jurisdiction under Rule 54(b) is a question of Federal Circuit law." *iLOR, LLC v. Google, Inc.*, 550 F.3d 1067, 1072 (Fed. Cir. 2008).

## V.   ARGUMENT

### A.   There is no final judgment on ParkerVision's Count I for infringement of the '940 patent.

In granting ParkerVision's Rule 54(b) motion, the district court explicitly severed claims 24 and 331 of '940 patent from the other asserted '940 patent claims at issue in Count I, permitting some claims to be immediately appealed while the other claims remain pending. Ex. G. In so doing, the district court committed legal error, as resolution of some but not all asserted claims is not a "final judgment" of ParkerVision's Count I for "Infringement of the '940 Patent."

"Appellate courts have historically disfavored piecemeal litigation and permitted appeals from complete and final judgments only." *W.L. Gore & Assocs.*, 975 F.2d at 861. To qualify as a final judgment for purposes of Rule 54(b), a district court decision "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980). Neither of these descriptions apply to the partial summary judgment entered by the district court on the '940 patent.

3136535

The district court's partial summary judgment order is not a "judgment," because it is not a complete decision on a cognizable claim for relief, *i.e.*, ParkerVision's Count I for "Infringement of the '940 Patent." As this Court has long held, "[t]he resolution of individual issues within a claim does not satisfy the requirements of Rule 54(b)." *Houston Indus. Inc. v. United States*, 78 F.3d 564, 567 (Fed. Cir. 1996). This is true even if, as ParkerVision argued below, "the facts and legal theory underlying the issue are distinct from the facts and legal theories underlying the remaining unresolved issues." *Id*.

Nor is the district court's partial summary judgment "final." Even if this Court were to affirm the district court's summary adjudication of claims 24 and 331, the ultimate disposition of Count I depends on a jury's verdict on the patent claims of the '940 patent still pending before the district court. A jury may still find that the same Qualcomm products infringed the '940 patent via claims 25, 26, 368, and 369, and it may still award ParkerVision relief for infringement of the '940 patent as alleged in Count I based on those claims.

In short, because the district court's order resolved only part of Count I while leaving other patent claims pending, it does not constitute a final, appealable judgment under Rule 54(b) or 28 U.S.C. § 1295(a)(1).

3136535

**B.**     **ParkerVision's theory of finality is incorrect—each asserted claim of patent is not a separate cause of action for Rule 54(b)'s finality requirement.**

In the district court, ParkerVision attempted to gloss over the jurisdictional issue raised by an immediate appeal of only portions of its '940 patent infringement cause of action: first by neglecting to address the issue in its opening Rule 54(b) motion and then, at the district court's prompting, by proposing an unprecedented, patent law–specific interpretation of Rule 54(b)'s finality requirement, whereby decisions on individual patent claims within a cause of action may be appealed piecemeal. *See* Ex. I, at 3 (arguing that "patent rights are adjudicated on a claim-by-claim basis, and Rule 54(b) provides the procedural mechanism to give effect to that structure at the judgment stage").

ParkerVision's novel position, and the district court's order adopting that position, are contrary to the patent statute, to this Court's precedent, and to the conclusions reached by every other court that has considered the issue.  The patent statute creates a single cause of action for infringement of a patent, not a separate cause of action for each individual claim of the patent.  *See* 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement *of his patent*."); *see also* 35 U.S.C. § 271(a) ("whoever without authority makes, uses, offers to sell, or sells any patented invention . . . *infringes the patent*.") (emphasis added).  Consistent with the plain language of the statute, this Court has held that *"[e]ach patent* asserted

9

raises an independent and distinct cause of action," *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1555 (Fed. Cir. 1996) (emphasis added), and it has prohibited plaintiffs from asserting different claims of the same patent against the same defendant and accused products in successive lawsuits. *See, e.g., Senju Pharm. Co. v. Apotex Inc.,* 746 F.3d 1344, 1353 (Fed. Cir. 2014).

This Court also has repeatedly explained that the term "claim" has a different meaning in patent law than it does in civil procedure, and that it is a mistake to treat the two as coextensive. In *Senju*, for example, this Court cautioned that "[u]se of the term 'claim' can cause confusion in a patent case involving claim preclusion law. *In patent law, a 'claim' is a substantive part of the patent document* and plays a critically important role in infringement litigation. *In civil procedure*, and particularly in discussions regarding preclusion law, *'claim' is equivalent to 'cause of action*.'" 746 F.3d at 1349 (Fed. Cir. 2014) (emphasis added); *accord Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001) ("the term 'claim' has a special meaning in patent law, which meaning is different from 'claim' in general civil procedure"). This Court has made the same observation in the specific context of Rule 54(b), stating in its non-precedential decision in *Donnelly Corp. v. Gentex Corp.*, 95 F.3d 1168 (Table), 1996 WL 468452, at *3 (Fed. Cir. 1996), that "[t]he term claim as used in Rule 54(b) refers, of course, to a claim in a cause of action, *not to individual patent claims*." *Id*. at *3 (emphasis added).

10

The order entering partial final judgment ignores the crucial distinction between a patent claim and a "claim"—*i.e.*, a cause of action—for civil procedure purposes such as Rule 54(b). In the civil procedure context of Rule 54(b), "an action alleging infringement of multiple claims asserted under a single patent asserts a single claim[.]" *Smithkline Beecham Corp. v. Apotex Corp.*, 2004 WL 634867, at *4 (E.D. Pa. Mar. 26, 2004); *accord Donnelly*, 1996 WL 468452, at *3. Therefore, although patent litigation may accord some separate consideration to individual patent claims, in the context of Rule 54(b) district courts can only certify an entire cause of action for appeal, which in patent cases means *all* asserted claims of a patent-in-suit.

No one has identified any authority for the proposition that a final judgment can be entered as to fewer than all asserted claims within a *single* patent. To the contrary, this Court—as well as the district courts that have been confronted with this issue—have consistently rejected attempts like ParkerVision's to certify a partial final judgment for some claims or theories while continuing to litigate other claims or theories under the same patent in the district court. For example, in the Court's non-precedential decision in *Donnelly*, the Court vacated and remanded the district court's Rule 54(b) certification where "the four claims of the '210 patent which are subject to the partial final judgment are not sufficiently distinct from the other claims of the same patent which remain before the district court." 1996 WL 468452, at *3.

11

3136535

In doing so, this Court remarked that "it is difficult to imagine a case in which subject matter is sufficiently related to be covered by a single patent, and yet sufficiently distinct as to warrant the grant of a motion for partial final judgment." *Id.*

Similarly, in *TruePosition, Inc. v. Polaris Wireless, Inc.*, the district court denied a Rule 54(b) motion that sought partial final judgment for only two out of three asserted claims in a single patent.  2015 WL 887935, at *4 (D. Del. Mar. 3, 2015).  The court reasoned that the "three asserted claims must be viewed as part of a single action for relief based on infringement.  Claims 113 and 114 have been resolved; Claim 98 has not.  As a result, the single right of action for relief based on infringement of the '299 Patent is not final within the meaning of Rule 54(b)." *Id.* And in *Smithkline*, the court denied a Rule 54(b) motion arising from an earlier summary judgment that had only resolved certain "product-by-process" claims without resolving "non-product-by-process" claims in the same patent (analogous to the present "partial summary judgment" of apparatus claims 24 and 331, but not method claims 25, 26, 368 and 369), because "an action alleging infringement of multiple claims asserted under a single patent asserts a single claim for purposes of Rule 54."  2004 WL 634867, at *4.

Beyond the Rule 54(b) context, ParkerVision's patent-claim-specific interpretation of the "final judgment" rule also cannot be reconciled with this Court's established jurisprudence concerning claim splitting and claim preclusion, which

3136535

consistently focuses on patents as a whole, not individual patent claims. For instance, a patent owner "cannot split up its ownership rights in a patent and assign different claims to different parties." *Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710, 721 (Fed. Cir. 2008); *see also Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1466 (Fed. Cir. 1998) ("property rights, including ownership, attach to patents as a whole, not individual claims"). And a patentee cannot "assert the same patent against the same party and the same subject matter" in successive lawsuits, even if the asserted patent claims are different, and even if the later asserted claims could not have been asserted earlier. *Senju Pharm.*, 746 F.3d at 1349 (affirming claim preclusion dismissal where patentee brought second suit based on reexamined claims of the same patent in the earlier suit).

Applying the same principles here confirms the Court's lack of jurisdiction. Just as ParkerVision could not separately assign claims 24 and 331 of the '940 patent or sue Qualcomm on those claims separately from its suit on claims 25, 26, 368 and 369 of the '940 patent, it cannot separately appeal the district court's partial summary judgment on those patent claims while the others remain pending in the district court. This is because, as this Court has repeatedly held, individual patent claims are not separate causes of action for civil procedure purposes such as Rule 54(b).

\* \* \* \* \*

13

3136535

In sum, the district court's partial summary adjudication of claims 24 and 331 of the '940 patent is not a final judgment for purposes of Rule 54(b). It does not dispose of the entirety of ParkerVision's cause of action for infringement of the '940 patent but rather resolves only two of six asserted patent claims asserted by ParkerVision in connection with that cause of action, leaving the balance awaiting resolution below. Under these circumstances, this Court does not have jurisdiction over the district court's partial summary adjudication of ParkerVision's '940 patent cause of action. ParkerVision's contrary interpretation of Rule 54(b) lacks any support in the case law and is contrary to this Court's precedents establishing that an individual patent claim is not a cause of action for civil procedure purposes.

## VI.    CONCLUSION

Qualcomm requests that this Court dismiss ParkerVision's appeal at Federal Circuit Dockets 2026-1033 and 2026-1035 for lack of jurisdiction.

14

3136535

Respectfully submitted,

Dated: October 23, 2025

/s/ Matthew M. Werdegar
ROBERT A. VAN NEST
MATTHEW M. WERDEGAR
SOPHIE HOOD
ANJALI SRINIVASAN
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

MATTHEW BRIGHAM
DENA CHEN
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 843-7400
Dchen@cooley.com
Mbrigham@cooley.com

EAMONN GARDNER
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202-2686
Telephone: (720) 566-4000
Facsimile: (720) 566-4099
Egardner@cooley.com

*Attorneys for Defendants-Appellees*
*QUALCOMM INCORPORATED,*
*QUALCOMM ATHEROS, INC.*

15

3136535

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules (Fed. R. App. P. 27(d)(2)(A)) because it meets the following:

The filing has been prepared using a proportionally-spaced typeface using Microsoft Word in 14-point font of Times New Roman, and includes 3,385 words, excluding parts exempted by Fed. R. App. P. 32(f) and Federal Circuit Rule 32(b). The word count includes the words counted by the Microsoft Word function.

This filing also complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E).

3136535

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 26-1033

**Short Case Caption** ParkerVision, Inc. v. Qualcomm Incorporated

**Filing Party/Entity** Qualcomm Incorporated; Qualcomm Atheros, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/23/2025

Signature: /s/ Matthew M. Werdegar

Name: Matthew M. Werdegar

**FORM 9. Certificate of Interest**

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Qualcomm Incorporated | | |
| Qualcomm Atheros, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐      None/Not Applicable          ☑      Additional pages attached

| See attached | | |
|---|---|---|
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)   ☐  No   ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑      None/Not Applicable          ☐      Additional pages attached

| | | |
|---|---|---|
| | | |

## ADDENDUM TO QUALCOMM'S FORM 9, QUESTION 4

**4. Legal Representatives**.  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

| LAW FIRM | ATTORNEYS |
|---|---|
| **Cooley LLP** | Priya B. Viswanath, Patrick Warren Lauppe, Sarah Butler Moore (former), Stephen R. Smith, Benjamin Damstedt (former), Benjamin S. Lin (former), Jeffrey Scott Karr, Stephen C. Neal, Erin C. Trenda, Timothy S. Teter (former) |
| **Carlton Fields, P.A.** | Daniel C. Johnson |
| **Bedell, Dittmar, DeVault, Pillans & Coxe, PA** | John Andrew DeVault, III, Michael E. Lockamy, Courtney Kneece Grimm (former) |
| **Cadwalader, Wickersham & Taft, LLP** | Howard Wizenfeld |

3224186

## EXHIBITS – TABLE OF CONTENTS

| EX | DOCUMENT DESCRIPTION | 14-CV-00687 ECF NO. |
|---|---|---|
| A | (Relevant Excerpts) First Amended Complaint for Patent Infringement, dated August 21, 2014 | 26 |
| B | (Relevant Excerpts) Joint Pre-Trial Statement, dated May 21, 2021 | 612 |
| C | Order (re Claim Construction), dated May 29, 2025 | 804 |
| D | Qualcomm's Unopposed Motion for Partial Summary Judgment of Noninfringement and Dismissal without Prejudice of Invalidity Counterclaims, dated June 25, 2025 | 809 |
| E | ParkerVision's Motion to (1) Enter Stipulated Final Judgment of Noninfringement of the Receiver Claims Under Rule 54(b); and (2) Sever and Stay the Remaining Claims Pending Appeal of the Court's Claim-Construction Order, dated June 26, 2025 | 811 |
| F | Qualcomm's Opposition to ParkerVision's Motion for Rule 54(b) Final Judgment and to Stay Remaining Claims Pending Appeal, dated July 8, 2025 | 814 |
| G | Order (re Partial Summary Judgment), dated August 21, 2025 | 815 |
| H | Endorsed Order re [814] Response in Opposition to ParkerVision's Motion for Rule 54(b) Final Judgment and to Stay Remaining Claims Pending Appeal, dated August 21, 2025 | 816 |
| I | ParkerVision's Reply in Support of its Motion for Rule 54(b) Final Judgment and to Stay Remaining Claims Pending Appeal, dated September 4, 2025 | 818 |
| J | Order (re Rule 54(b) Judgment), dated October 2, 2025 | 820 |

3224377

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| PARKERVISION, INC., | |
| Plaintiff, | |
| v. | CASE NO.: 6:14-cv-00687-PGB-KRS |
| QUALCOMM INCORPORATED, QUALCOMM ATHEROS, INC., HTC CORPORATION, HTC AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, | **JURY TRIAL DEMANDED AND INJUNCTIVE RELIEF SOUGHT** |
| Defendants. | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff ParkerVision, Inc. ("ParkerVision"), files this First Amended Complaint for patent infringement against Defendants Qualcomm Incorporated ("Qualcomm Inc."), Qualcomm Atheros, Inc. ("Qualcomm Atheros"), HTC Corporation ("HTC Corp."), HTC America, Inc. ("HTC America"), Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Samsung Telecommunications America, LLC ("STA") (Qualcomm Inc., Qualcomm Atheros, HTC Corp., HTC America, SEC, SEA, and STA collectively "Defendants") and alleges as follows:

## BACKGROUND

1. Since as early as 1990, ParkerVision has pioneered the development of numerous telecommunication technologies, resulting in hundreds of patents. In the mid-

1

1990s, while working on a radio-controlled tracking camera, engineers at ParkerVision developed a novel down-converter that allowed radio frequency ("RF") receivers to be built smaller, cheaper, and with greatly improved performance. As a result of continued work with this novel down-conversion technology, ParkerVision's engineers developed novel up-converter and other complementary wireless communications technologies.

2. ParkerVision's efforts to develop its down-conversion, up-conversion, and complementary wireless communications technologies culminated in the ideas patented in U.S. Patent Nos. 6,091,940 ("the '940 patent"), 6,580,902 ("the '902 patent"), 6,704,549 ("the '549 patent"), 6,873,836 ("the '836 patent"), 7,039,372 ("the '372 patent"), 7,050,508 ("the '508 patent"), 7,194,246 ("the '246 patent), 7,218,907 ("the '907 patent"), 7,865,177 ("the '177 patent), 7,966,012 ("the '012 patent"), and 8,190,116 ("the '116 patent") (collectively "the patents-in-suit"), among other patents.

3. ParkerVision's patented ideas help make the receivers and transmitters used in today's mobile devices (such as smart phones and tablets) smaller, cheaper, more efficient, and higher performance.

## PARTIES

4. Plaintiff ParkerVision is a Florida corporation with its principal places of business at 7915 Baymeadows Way, Suite 400, Jacksonville, FL 32256 and 1035 Greenwood Boulevard, Lake Mary, FL 32746.

5. Defendant Qualcomm Inc. is a Delaware corporation with its principal place of business at 5775 Morehouse Drive, San Diego, CA 92121. Qualcomm Inc. can be served with process through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

2

McKool 1010265v3

Case: 26-1032  Document: 14  Page: 261  Filed: 10/23/2025

6.      Defendant Qualcomm Atheros is a Delaware corporation with its principal place of business at 1700 Technology Drive, San Jose, CA 95110. Qualcomm Atheros can be served with process through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

7.      Defendant HTC Corp. is a Taiwanese corporation with its principal place of business at No. 23, Xinghua Road, Taoyuan City, Taoyuan County 330, Taiwan, R.O.C.

8.      Defendant HTC America is a Washington corporation with its principal place of business at 13920 SE Eastgate Way, Suite 400, Bellevue, WA 98005. HTC America can be served with process through its registered agent, National Registered Agents, Inc., 1200 South Pine Island Road, Plantation, FL 33324.

9.      Upon information and belief, Defendant SEC is a corporation organized and existing under the laws of the Republic of Korea with its principal place of business at 416, Maetan 3-dong, Yeongtong-gu, Suwon-si, Gyeonggi-do 443-742, South Korea.

10.      Upon information and belief, Defendant SEA is a subsidiary of SEC and is a corporation organized and existing under the laws of the State of New York. Samsung Electronics America, Inc. maintains its principal place of business at 85 Challenger Road, Ridgefield Park, NJ 07660.

11.      Upon information and belief, Defendant STA is a subsidiary of SEC and is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business at 1301 East Lookout Drive, Richardson, TX 75082.

## JURISDICTION AND VENUE

12.      Plaintiff repeats and re-alleges the allegations in Paragraphs 1 through 11 as though fully set forth in their entirety.

3

## THE ASSERTED PATENTS

26.     On July 18, 2000, the U.S. Patent and Trademark Office duly and legally issued the '940 patent, entitled "Method and System for Frequency Up-conversion," to David F. Sorrells, Michael J. Bultman, Robert W. Cook, Richard C. Looke, and Charley D. Moses, Jr. On November 4, 2003, the United States Patent Office duly and legally issued a Certificate of Correction for claims 8, 15, 36, 115, 120, 192, 272, 273, 294, 332, 343, 370, and 374. ParkerVision is the owner by assignment of the '940 patent and possesses all rights of recovery under the '940 patent. A true and correct copy of the '940 patent is attached hereto as Exhibit A and incorporated herein by reference.

27.     On June 17, 2003, the U.S. Patent and Trademark Office duly and legally issued the '902 patent, entitled "Frequency Translation Using Optimized Switch Structures," to David F. Sorrells, Michael J. Bultman, Robert W. Cook, Richard C. Looke, and Charley D. Moses, Jr. On March 30, 2004, the United States Patent Office duly and legally issued a Certificate of Correction for the '902 patent's specification. ParkerVision is the owner by assignment of the '902 patent and possesses all rights of recovery under the '902 patent. A true and correct copy of the '902 patent is attached hereto as Exhibit B and incorporated herein by reference.

28.     On March 9, 2004, the U.S. Patent and Trademark Office duly and legally issued the '549 patent, entitled "Multi-mode, Multi-band Communication System," to David F. Sorrells, Michael J. Bultman, Charles D. Clements, Robert W. Cook, Joseph M. Hamilla, Richard C. Looke, Charley D. Moses, Jr., and Gregory S. Silver. On October 18, 2005, the United States Patent Office duly and legally issued a Certificate of Correction for claims 12, 24, 55, and 63. ParkerVision is the owner by assignment of the '549 patent and

8

possesses all rights of recovery under the '549 patent. A true and correct copy of the '549 patent is attached hereto as Exhibit C and incorporated herein by reference.

29.     On March 29, 2005, the U.S. Patent and Trademark Office duly and legally issued the '836 patent), entitled "Universal Platform Module and Methods and Apparatus Relating thereto Enabled by Universal Frequency Translation Technology," to David F. Sorrells, Michael J. Bultman, Robert W. Cook, Richard C. Looke, and Charley D. Moses, Jr. ParkerVision is the owner by assignment of the '836 patent and possesses all rights of recovery under the '836 patent. A true and correct copy of the '836 patent is attached hereto as Exhibit D and incorporated herein by reference.

30.     On May 2, 2006, the U.S. Patent and Trademark Office duly and legally issued the '372 patent, entitled "Method and System for Frequency Up-conversion with Modulation Embodiments," to David F. Sorrells, Michael J. Bultman, Robert W. Cook, Richard C. Looke, and Charley D. Moses, Jr. On December 12, 2006, the United States Patent Office duly and legally issued a Certificate of Correction for claim 24. ParkerVision is the owner by assignment of the '372 patent and possesses all rights of recovery under the '372 patent. A true and correct copy of the '372 patent is attached hereto as Exhibit E and incorporated herein by reference.

31.     On May 23, 2006, the U.S. Patent and Trademark Office duly and legally issued the '508 patent, entitled "Method and System for Frequency Up-conversion with a Variety of Transmitter Configurations," to David F. Sorrells, Michael J. Bultman, Robert W. Cook, Richard C. Looke, Charley D. Moses, Jr., Gregory S. Rawlins, and Michael W. Rawlins. ParkerVision is the owner by assignment of the '508 patent and possesses all

9

rights of recovery under the '508 patent. A true and correct copy of the '508 patent is attached hereto as Exhibit F and incorporated herein by reference.

32.    On March 20, 2007, the U.S. Patent and Trademark Office duly and legally issued the '246 patent, entitled "Methods and Systems For Down-converting A Signal Using A Complementary Transistor Structure," to David F. Sorrells, Michael J. Bultman, Robert W. Cook, Richard C. Looke, and Charley D. Moses, Jr. On October 9, 2007, the United States Patent Office duly and legally issued a Certificate of Correction for the '246 patent's specification. ParkerVision is the owner by assignment of the '246 patent and possesses all rights of recovery under the '246 patent. A true and correct copy of the '246 patent is attached hereto as Exhibit G and incorporated herein by reference.

33.    On May 15, 2007, the U.S. Patent and Trademark Office duly and legally issued the '907 patent, entitled "Method And Circuit For Down-converting A Signal," to David F. Sorrells, Michael J. Bultman, Robert W. Cook, Richard C. Looke, and Charley D. Moses, Jr. ParkerVision is the owner by assignment of the '907 patent and possesses all rights of recovery under the '907 patent. A true and correct copy of the '907 patent is attached hereto as Exhibit H and incorporated herein by reference.

34.    On January 4, 2011, the U.S. Patent and Trademark Office duly and legally issued the '177 patent, entitled "Method And System For Down-converting An Electromagnetic Signal, And Transforms For Same, And Aperture Relationships," to David F. Sorrells, Michael J. Bultman, Robert W. Cook, Richard C. Looke, Charley D. Moses, Gregory S. Rawlins, and Michael W. Rawlins. ParkerVision is the owner by assignment of the '177 patent and possesses all rights of recovery under the '177 patent. A

10

true and correct copy of the '177 patent is attached hereto as Exhibit I and incorporated herein by reference.

35.    On June 21, 2011, the U.S. Patent and Trademark Office duly and legally issued the '012 patent, entitled "Wireless Protocol Converter," to Jeffrey L. Parker. ParkerVision is the owner by assignment of the '012 patent and possesses all rights of recovery under the '012 patent. A true and correct copy of the '012 patent is attached hereto as Exhibit J and incorporated herein by reference.

36.    On May 29, 2012, the U.S. Patent and Trademark Office duly and legally issued the '116 patent, entitled "Methods and Systems for Down-converting a Signal Using a Complementary Transistor Structure," to David F. Sorrells, Michael J. Bultman, Robert W. Cook, Richard C. Looke, and Charley D. Moses, Jr. ParkerVision is the owner by assignment of the '116 patent and possesses all rights of recovery under the '116 patent. A true and correct copy of the '116 patent is attached hereto as Exhibit K and incorporated herein by reference.

37.    ParkerVision is the sole and exclusive owner of all rights, title, and interest to the patents-in-suit, including the right to recover damages for past infringement. ParkerVision owned the patents-in-suit throughout the period of the Defendants' infringement and still owns the patents-in-suit. ParkerVision has not granted Qualcomm, HTC, or Samsung a license to practice the patents-in-suit.

38.    The patents-in-suit are valid and enforceable.

**<u>GENERAL ALLEGATIONS</u>**

39.    Defendants have and continue to make, use, import into the United States, market, offer for sale, and/or sell in the United States integrated circuits that infringe the

11

patents-in-suit, and/or induce or contribute to the infringement of the patents-in-suit by others, including original equipment manufacturers ("OEMs") and end-users.

40. ParkerVision has been damaged as a result of Defendants' infringing conduct. Defendants are therefore at least liable to ParkerVision in an amount that adequately compensates ParkerVision for Defendants' infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT I: INFRINGEMENT OF THE '940 PATENT

41. ParkerVision repeats and realleges the allegations in paragraphs 1-40 as though fully set forth herein.

### Qualcomm Infringes the '940 Patent

42. Qualcomm has directly infringed and continues to directly infringe the '940 patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by one or more claims of the '940 patent. Qualcomm products that infringe one or more claims of the '940 patent include, but are not limited to, the RTR8600, QTR8200, and any other Qualcomm device that is capable of up-conversion of a lower-frequency signal to a higher-frequency signal as claimed in the '940 patent.

43. Qualcomm makes, uses, sells, offers for sale, or imports into the United States these products and thus directly infringes at least one or more claims of the '940 patent. Upon information and belief, Qualcomm also uses these products via its internal use and testing in the United States, directly infringing one or more claims of the '940 patent.

McKool 1010265v3

Case: 26-1023   Document: 14   Page: 32   Filed: 10/23/2025

44.     Qualcomm has induced and continues to induce and contribute to infringement of the '940 patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '940 patent, including, but not limited to, Qualcomm's products listed above. Qualcomm provides these products to others, such as manufacturers, customers, resellers, and end-use consumers who, in turn, use, offer for sale, or sell in the United States these products that infringe one or more claims of the '940 patent.

45.     Qualcomm indirectly infringes the '940 patent by inducing infringement by others, such as OEMs, manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the OEMs, manufacturers, customers, resellers, and/or end-use customers of the infringing products.

46.     Qualcomm has had actual knowledge of or was willfully blind to the '940 patent since the '940 patent issued. For example, in May 1999, Qualcomm met with ParkerVision and its lawyers to discuss ten of ParkerVision's pending patent applications, one of which issued as the '940 patent. It is believed that Qualcomm received the '940 patent upon its issuance. At the latest, Qualcomm received notice of the '940 patent as of the date this lawsuit was filed.

47.     Qualcomm designed the infringing products such that they would each infringe one or more claims of the '940 patent if made, used, sold, offered for sale, or imported into the United States. Qualcomm provides the infringing products to others, such as OEMs, manufacturers, customers, resellers, and/or end-use customers, who, in turn, offer for sale, sell, import into, or use these infringing products to infringe one or more

13

claims of the '940 patent. Through its manufacture and sale of the infringing products, Qualcomm specifically intended its OEMs, manufacturers, customers, resellers, and/or end-use customers to infringe one or more claims of the '940 patent.

48.     Qualcomm specifically intends for others, such as OEMs, manufacturers, customers, resellers, and/or end-use customers, to directly infringe one or more claims of the '940 patent in the United States. For example, Qualcomm provides instructions, user guides, and/or other design documentation to OEMs, manufacturers, customers, resellers, and/or end-use customers regarding the use and operation of Qualcomm's products in an infringing way. When OEMs, manufacturers, customers, resellers, and/or end-use customers follow such instructions, user guides, and/or other design documentation, they directly infringe one or more claims of the '940 patent. Qualcomm knows that by providing such instructions, user guides, and/or other design documentation, OEMs, manufacturers, customers, resellers, and end-use customers follow those instructions, user guides, and other design documentation, and directly infringe one or more claims of the '940 patent. Qualcomm thus knows that its actions actively induce infringement. As another example, Qualcomm provides infringing devices operable on 1900 MHz WCDMA, the WCDMA band that is used in North America. Qualcomm performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge or willful blindness of the '940 patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

49.     Qualcomm indirectly infringes the '940 patent by contributing to infringement by others, such as OEMs, manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the

14

United States. Direct infringement is the result of activities performed by the OEMs, manufacturers, customers, resellers, and/or end-use customers of the infringing products.

50.    Qualcomm received notice of the '940 patent at least as of the date this complaint was filed. Qualcomm also had actual knowledge of or remained willfully blind to the '940 patent before the filing of this lawsuit, as set forth *supra* at Paragraph 46.

51.    Qualcomm's infringing products allow for the up-conversion of a lower-frequency signal, *e.g.*, a baseband information signal, to a higher-frequency signal, *e.g.,* carrier signal. When the infringing products are used to up-convert the lower-frequency signal to a higher-frequency signal as claimed in the '940 patent, the infringing products must necessarily up-convert in an infringing manner. The infringing products cannot operate in an acceptable manner absent the ability to up-convert a lower-frequency signal to a higher-frequency signal.

52.    A reasonable inference to be drawn from the facts set forth above is that the ability to up-convert a lower-frequency signal to a higher-frequency signal is especially made or especially adapted to operate on Qualcomm's infringing products.

53.    A reasonable inference to be drawn from the facts set forth is that the ability to up-convert a lower-frequency signal to a higher-frequency signal is not a staple article or commodity of commerce and that its use is required for operation of the infringing products. Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

54.    Qualcomm's infringing products, with the ability to up-convert a lower-frequency signal to a higher-frequency signal, are each a material part of the invention of the '940 patent and are especially made for the infringing manufacturing, offering for sale,

15

McKool 1010265v3

Case 26-1033   Document: 14   Page: 35   Filed: 10/23/2025

sales, and use of the infringing products. Qualcomm's infringing products are especially made or adapted to infringe one or more claims of the '940 patent. Because the manufacturing, offering for sale, sales, and use of the infringing products infringe one or more claims of the '940 patent, Qualcomm's sales of its infringing products have no substantial non-infringing uses.

55.     Accordingly, a reasonable inference is that Qualcomm offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing one or more claims of the '940 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

56.     As a direct and proximate consequence of the acts and practices of Qualcomm in infringing, directly and/or indirectly, one or more claims of the '940 patent, ParkerVision has suffered, is suffering, and, unless such acts and practices are enjoined by the Court, will continue to suffer injury to its business and property rights. ParkerVision has also suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284, in an amount to be determined at trial.

57.     In addition, the infringing acts and practices of Qualcomm have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to ParkerVision for which there is no adequate remedy at law, and for which ParkerVision is entitled to injunctive relief under 35 U.S.C. § 283.

McKool 1010265v3

58.     Qualcomm has known about the '940 patent, as set forth *supra* at Paragraph 46. Moreover, Qualcomm lacks justifiable belief that there is no infringement, or that the infringed claims are invalid, and has acted with objective recklessness in its infringing activity. Qualcomm's infringement is therefore willful, and ParkerVision is entitled to an award of exemplary damages, attorneys' fees, and costs in bringing this action.

**HTC Infringes the '940 Patent**

59.     HTC has infringed and continues to directly infringe the '940 patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by one or more claims of the '940 patent. The infringing products include HTC products that include Qualcomm infringing products. An example of the infringing products that infringe one or more claims of the '940 patent include, but are not limited to, the HTC Evo 4G LTE cellular telephone handset (that incorporates Qualcomm's RTR8600), the HTC Flyer tablet (that incorporates Qualcomm's QTR8200), and any other HTC device that incorporates a Qualcomm device capable of up-conversion of a lower-frequency signal to a higher-frequency signal as claimed in the '940 patent. HTC makes, uses, sells, offers for sale, or imports into the United States these products and thus directly infringes one or more claims of the '940 patent.

60.     HTC has induced and continues to induce and contribute to infringement of the '940 patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '940 patent, including, but not limited to, HTC's products listed above. HTC provides these products to others, such as manufacturers, customers, resellers, and end-use consumers who, in turn,

17

composition, or a material or apparatus for use in practicing one or more claims of the '116 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

564. As a direct and proximate consequence of the acts and practices of Samsung in infringing, directly and/or indirectly, one or more claims of the '116 patent, ParkerVision has suffered, is suffering, and, unless such acts and practices are enjoined by the Court, will continue to suffer injury to its business and property rights. ParkerVision has also suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284, in an amount to be determined at trial.

565. In addition, the infringing acts and practices of Samsung have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to ParkerVision for which there is no adequate remedy at law, and for which ParkerVision is entitled to injunctive relief under 35 U.S.C. § 283.

## PRAYER FOR RELIEF

WHEREFORE, ParkerVision respectfully requests that this Court enter judgment in its favor and grant the following relief:

A. a judgment that Defendants directly and/or indirectly infringe one or more claims of each of the patents-in-suit;

B. award ParkerVision damages in an amount adequate to compensate ParkerVision for Defendants' infringing products' infringement of the claims of the patents-in-suit, but in no event less than a reasonable royalty, and supplemental damages for any

163

McKool 1010265v3

continuing post-verdict infringement up until entry of the final judgment with an accounting as needed, under 35 U.S.C. § 284;

C.      a judgment and order finding that Qualcomm's infringement is willful and deliberate, entitling ParkerVision to enhanced damages pursuant to 35 U.S.C. § 284;

D.      award ParkerVision pre-judgment interest and post-judgment interest on the damages awarded, including pre-judgment interest, pursuant to 35 U.S.C. § 284, from the date of each act of infringement of the patents-in-suit by Defendants to the day a damages judgment is entered, and an award of post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

E.      a judgment and order finding this to be an exceptional case and requiring Defendants to pay the costs of this action (including all disbursements) and attorneys' fees, pursuant to 35 U.S.C. § 285;

F.      order an accounting for damages;

G.      enter a permanent injunction enjoining Defendants, and all others in active concert with Defendants, from further infringement of the patents-in-suit;

H.      award a compulsory future royalty for any patent of the patents-in-suit for which an injunction does not issue; and

I.      award such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

ParkerVision hereby demands a jury for all issues so triable.

McKool 1010265v3

August 21, 2014

Respectfully submitted,

**McKOOL SMITH, P.C.**

_____
Douglas A. Cawley, Trial Counsel
Texas State Bar No. 04035500
E-mail: dcawley@mckoolsmith.com
Richard A. Kamprath
Texas State Bar No. 24078767
E-mail: rkamprath@mckoolsmith.com
McKool Smith P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Kevin L. Burgess
Texas State Bar No. 24006927
E-mail: kburgess@mckoolsmith.com
Josh W. Budwin
Texas State Bar No. 24050347
E-mail: jbudwin@mckoolsmith.com
Leah Buratti
Texas State Bar No. 24064897
E-mail: lburatti@mckoolsmith.com
Mario Apreotesi
Texas State Bar No. 24080772
E-mail: mapreotesi@mckoolsmith.com
McKool Smith P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

**SMITH HULSEY & BUSEY**
/s/ *James A. Bolling*
Stephen D. Busey
James A. Bolling
Florida Bar Number 117790
Florida Bar Number 901253
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
jbolling@smithhulsey.com

*ATTORNEYS FOR PLAINTIFF
PARKERVISION, INC.*

165

McKool 1010265v3

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **PARKERVISION, INC.,** | |
| **PLAINTIFF,** | |
| **v.** | **CASE NO.: 6:14-cv-687-PGB-LRH** |
| **QUALCOMM INCORPORATED and QUALCOMM ATHEROS, INC.,** | |
| **DEFENDANTS.** | |

## JOINT PRE-TRIAL STATEMENT

Pursuant to the Case Management and Scheduling Order and Local Rule 3.06(b), Plaintiff ParkerVision, Inc. ("ParkerVision") and Defendants Qualcomm Incorporated and Qualcomm Atheros, Inc. ("Qualcomm") (collectively, "the Parties") respectfully submit this Joint Pre-Trial Statement. The parties also request leave to submit an updated joint pre-trial statement in accordance with any new schedule.

## I.     LOCAL RULE 3.06(a) CERTIFICATION

As required by the Case Management and Scheduling Order, Local Rule 3.06(a), and Orlando Division Protocol for Proceedings During COVID-19 Directives No. 7, counsel for each party met and conferred via Zoom on February 17, 2021 and on May 7, 2021. The parties met and conferred on issues identified in Local Rule 3.06(a) and as required by the August 30, 2019 Amended Case Management and Scheduling Order.

#### 4.     ParkerVision's Infringement Contentions

Qualcomm's infringing products are receivers, transceivers, and integrated transceivers that Qualcomm's customers incorporate into cell phones and tablets. Qualcomm's infringing products (the "Accused Products") include the following Qualcomm design architectures: Aadi, Black Pearl, Boson, Chandra, Flying Dutchman, GZIF3, GZIF4, Hubble, Lepton, Magellan, Napoleon, Nucleus, Odyssey, Quark, Ramsis, Rex, Solo/LCU, Volans, and Voltron. These design architectures correspond to the following individual integrated circuits: WTR2955, WTR2655, WTR2965, WFR1620, WTR4905, WTR4605, SDR845, WTR1625, WTR1625L, WTR1626L, RTR6275, RTR6237 RTR6236, RTR6285A, RTR6285, RTR6280, MXU6219, WTR5975, WTR3905, WTR3925, WTR3120, MDM6200, MDM6600, QSC6155, QSC6165, QSC6175, QSC6185, QSC6195, QSC6295 (SCMM), QSC6695, QTR8200, QTR8600, QTR8600L, QTR8601, QTR8615, QTR8615L, RTR8600, RTR8601, RTR8605, QSC1100, QSC1110, WTR2605, WTR2100, Odyssey, WTR1605, WTR1605L, WTR1608L, WFR2600, MDM6085, QSC6055, QSC6065, QSC6075, QSC6085, SDR660, ESC6240, ESC6270, MDM6270, QSC6240, QSC6270, WCN1314, MXC6369, RTR6500, WTR3900.

The foregoing identification of Accused Products and model numbers are accused of infringement as follows:

| | Asserted Receiver Claims | Asserted Transmitter Claims |
|---|---|---|
| ███████ | '907 claims 1 and 10<br>'177 claims 1, 2, 3, 5, 7, 10, 11, and 14<br>'940 claims 24 and 331 | '940 claims 24 ,25, 26, 331, 368, and 369<br>'372 claims 99, 100, 107, and 126 |
| ███████ | '907 claims 1 and 10<br>'177 claims 1, 2, 3, 5, 7, 10, 11, and 14 | -- |
| ███████ | '907 claims 1 and 10<br>'177 claims 1, 2, 3, 5, 7, 10, 11, and 14<br>'940 claims 24 and 331 | '940 claims 24 ,25, 26, 331, 368, and 369<br>'372 claims 99, 100, 107, and 126 |
| ███████ | '907 claims 1 and 10<br>'177 claims 1, 2, 3, 5, 7, 10, 11, and 14<br>'940 claims 24 and 331 | '940 claims 24 ,25, 26, 331, 368, and 369<br>'372 claims 99, 100, 107, and 126 |
| ███████ | '907 claims 1 and 10<br>'177 claims 1, 2, 3, 5, 7, 10, 11, and 14<br>'940 claims 24 and 331 | '940 claims 24 ,25, 26, 331, 368, and 369<br>'372 claims 99, 100, 107, and 126 |
| ███████ | -- | '940 claims 25, 26, 368, and 369<br>'372 claims 99, 100, 107, and 126 |
| ███████ | -- | '940 claims 25, 26, 368, and 369<br>'372 claims 99, 100, 107, and 126 |
| ███████ | '907 claims 1 and 10<br>'177 claims 1, 2, 3, 5, 7, 10, 11, and 14<br>'940 claims 24 and 331 | '940 claims 24 ,25, 26, 331, 368, and 369<br>'372 claims 99, 100, 107, and 126 |
| ███████ | '907 claims 1 and 10<br>'177 claims 1, 2, 3, 5, 7, 10, 11, and 14<br>'940 claims 24 and 331 | '940 claims 24 ,25, 26, 331, 368, and 369<br>'372 claims 99, 100, 107, and 126 |

14

| | ’907 claims 1 and 10 ’177 claims 1, 2, 3, 5, 7, 10, 11, and 14 ’940 claims 24 and 331 | ’940 claims 24 ,25, 26, 331, 368, and 369 ’372 claims 99, 100, 107, and 126 |
| --- | --- | --- |
| | ’907 claims 1 and 10 ’177 claims 1, 2, 3, 5, 7, 10, 11, and 14 ’940 claims 24 and 331 | ’940 claims 24 ,25, 26, 331, 368, and 369 ’372 claims 99, 100, 107, and 126 |
| | ’907 claims 1 and 10 ’177 claims 1, 2, 3, 5, 7, 10, 11, and 14 ’940 claims 24 and 331 | ’940 claims 24 ,25, 26, 331, 368, and 369 ’372 claims 99, 100, 107, and 126 |
| | ’907 claims 1 and 10 ’177 claims 1, 2, 3, 5, 7, 10, 11, and 14 ’940 claims 24 and 331 | ’940 claims 24 ,25, 26, 331, 368, and 369 ’372 claims 99, 100, 107, and 126 |
| | ’907 claims 1 and 10 ’177 claims 1, 2, 3, 5, 7, 10, 11, and 14 | -- |
| | -- | ’940 claims 25, 26, 368, and 369 ’372 claims 99, 100, 107, and 126 |
| | ’907 claims 1 and 10 | ’940 claims 24, 25, 26, 331, 368, and 369 |

15

| | '177 claims 1, 2, 3, 5, 7, 10, 11, and 14<br>'940 claims 24 and 331 | '372 claims 99, 100, 107, and 126 |
|---|---|---|
| ████ | '907 claims 1 and 10<br>'177 claims 1, 2, 3, 5, 7, 10, 11, and 14<br>'940 claims 24 and 331 | '940 claims 24, 25, 26, 331, 368, and 369<br>'372 claims 99, 100, 107, and 126 |
| ████ | -- | '940 claims 25, 26, 368, and 369<br>'372 claims 99, 100, 107, and 126 |
| ████ | -- | '940 claims 25, 26, 368, and 369<br>'372 claims 99, 100, 107, and 126 |

Qualcomm is directly liable for the infringement of the Accused Products because it makes, uses, offers to sell, sells, and/or imports each of the Accused Products into the United States, without authority or license from ParkerVision. ParkerVision asserts that for the purposes of infringement or noninfringement (but not damages), the design, circuitry, and operation of the accused products created from a particular die is the same. A showing that an accused product created from a particular die infringes an asserted claim is also a showing that the other accused products created from that die also infringe the same claim. Likewise, a finding that a particular die does not infringe one or more asserted claims of the patents-in-suit also requires a finding that the accused products associated with that die do not infringe the same claims.

Qualcomm indirectly infringes the Asserted Claims of each of the Patents-in-Suit by active inducement under 35 U.S.C. § 271 (b). Qualcomm has induced

and continues to induce its customers and/or users of the Accused Products to directly infringe the Asserted Claims of each of the Patents-in-Suit. Qualcomm specifically intends for its customers and/or users of the Accused Products to directly infringe the Asserted claims of each of the Patents-in-Suit in the United States. Qualcomm knew of or was willfully blind to each of the Patents-in-Suit before the May 2, 2014 filing of the original complaint by ParkerVision. Qualcomm designed the Accused Products such that they would each infringe the Asserted Claims of each of the Patents-in-Suit if made, used, sold, offered for sale or imported into the United States. Qualcomm knows that the customers and/or users of the Accused Products will directly infringe the Asserted Claims of each of the Patents-in-Suit when those customers and/or users make, use, sell, offer to sell, and/or import into the United States the Accused Products and/or cellular telephones and mobile devices that include the Accused Products.

Qualcomm has long known about each of the Patents-in-Suit, or was willfully blind to the existence of the Patents-in-Suit. Qualcomm's infringement of ParkerVision's patents was therefore willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate. Qualcomm's internal emails show that it was well aware of ParkerVision's patents and was actively trying to avoid liability for its infringing acts. For example,

██████████████████████████████████

██████████████████████████████████

████████████████████████████████ provide a non-infringing

17

alternative to ParkerVision's energy sampling technologies. This is incorrect.



In fact, these products still make use of ParkerVision's energy sampling technologies, which are particularly adept at dealing with noise.

### 5. ParkerVision Has Suffered Harm as a Result of Qualcomm's Infringement

Qualcomm's acts of direct and induced infringement have caused damage to ParkerVision, and ParkerVision is entitled to recover compensatory damages sustained as a result of Qualcomm's wrongful acts in the form of a reasonable royalty.

ParkerVision's licenses with VIA and Symbol Technologies, as well as the negotiations with Qualcomm, show that the hypothetical negotiation would have been on a per-unit basis.

Qualcomm received the following benefits from ParkerVision's technology:

- the ability to reduce its costs;

- the ability to market that it reduced the costs of its customers through a reduction in the components needs operate the chips;

18

# EXHIBIT C

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PARKERVISION, INC.,

        **Plaintiff,**

v.                               **Case No: 6:14-cv-687-PGB-LHP**

QUALCOMM INCORPORATED
and QUALCOMM ATHEROS,
INC.,

        **Defendants.**
                            /

## ORDER

This cause is before the Court on the parties' Third Claim Construction briefing as directed by the Federal Circuit. (*See* Doc. 794). The parties dispute the construction to be given to "whereby the energy provided to the load forms a down-converted signal" ('907 patent) and "a storage device storing energy from said UFT module" ('940 patent). (*Id.*). Defendants have filed their claim construction brief (Doc. 798), and the Plaintiff has submitted a response. (Doc. 796).

## I. BACKGROUND[1]

In February 2016, this Court granted the parties' joint motion to stay the proceedings in this case ("***ParkerVision II***"). (Doc. 250). In 2018, the Court lifted its stay of *ParkerVision II* and directed the parties to address whether any

---

[1] For a comprehensive discussion of the procedural history of this case and of *ParkerVision I*, see Docket Entry 348 and *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345 (Fed. Cir. 2024).

patents and claims brought in the instant litigation are affected by a prior patent case involving the parties ("***ParkerVision I***"). (Docs. 274, 297). On September 27, 2019, Defendants filed their motion for partial summary judgment of noninfringement based on collateral estoppel from *ParkerVision I*. (Docs. 318, 321).[2] Plaintiff filed a response in opposition (Doc. 327), and Defendants filed a reply. (Doc. 330). On January 16, 2020, the Court denied Defendants' motion, noting that issue preclusion extends to new products only if the defendant shows a close identity between the accused and adjudicated devices. (Doc. 348, p. 12). The Court found the unsworn testimony of Defendants' employee and citation to their arguments before the International Trade Commission ("**ITC**") was inadequate to establish a close identity, where the Defendants failed to conduct a side-by-side comparison of the relevant architecture of the accused devices. (*Id*. at p. 13).

The Court then turned to Defendants' contention that claim 1 of the '907 patent and claim 23 of the '551 patent, the latter being at issue in *ParkerVision I*, use "slightly different language to describe substantially the same invention." (*Id*. at p. 14). Plaintiff countered that their expert, Dr. Allen, opined that claim 1 describes "energy that is provided to the load (during periodic couplings) from the electromagnetic signal, without passing through the energy storage device," and therefore is not the same concept as claim 23 of the '551 patent in *ParkerVision I*.

---

[2] To protect proprietary information, the Court permitted the parties to file more comprehensive briefing under seal and has issued Orders wherein such information is discussed under seal.

(*Id.* at pp. 17–18). The Court found Dr. Allen's declaration created a material issue of fact that precluded summary judgment. (*Id.* at p. 18).

The Federal Circuit observed in its most recent opinion that this Court recognized the receiver claims at issue in *ParkerVision II* "might lack the generating limitation [dispositive in *ParkerVision I*] and, therefore, would not exclude down-converting occurring *before* the capacitor." *ParkerVision, Inc.*, 116 F.4th at 1353. That is, the Federal Circuit agreed with this Court's prior ruling that a material issue of fact exists which precludes summary judgment without affirmatively finding the claims in *ParkerVision II* lack the generating limitation.

On April 29, 2020, the Court issued a 58-page claim construction Order following extensive briefing and two *Markman* hearings. (Doc. 381). The Court construed numerous disputed terms, but neither party asked the Court to construe the two claims at issue here.[3] On March 4, 2021, Defendants moved for summary judgment on noninfringement and invalidity (Doc. 538), which the Court granted, (Doc. 685). On appeal, the Federal Circuit held that "the accused products at issue here operate, in all material respects, in the same manner as the products accused of infringement" in *ParkerVision I*. *ParkerVision, Inc.*, 116 F.4th at 1356. "Therefore, determining whether the infringement issue here is the same as the

---

[3]    The Defendants request construction of claim 1 of the '907 patent, "whereby the energy provided to the load forms a down-converted signal" with "forms" construed to mean "generates." (Doc. 798, p. 2). Defendants also ask the Court to construe claims 24 and 331 of the '940 patent, "a storage device storing energy from said UFT module" as "a storage device storing energy from said UFT module and using that energy to generate a down-converted signal." (*Id.* at p. 15).

infringement issue in the 2011 Action [(*ParkerVision I*)] requires only an assessment of whether the receiver claims of the '907 and '940 patents . . . are materially the same as the claims that were the basis for the finding of non-infringement in the 2011 Action." *Id.* The Circuit Court ordered that on remand, this Court should undertake any necessary claim construction and then determine whether the receiver claims asserted in this case have the same generating limitation of the claims at issue in *ParkerVision I. Id.* at 1360. The undersigned, being mindful of the Federal Circuit's directive, instructed the parties to submit their respective claim construction briefs on claim 1 of the '907 patent and claims 24 and 331 of the '940 patent.

Defendants submitted a claim construction brief in which, as expected, counsel discussed the intrinsic evidence of record, *i.e.*, the patent, including the claims and the specification. Plaintiff, rather than submitting a claim construction brief, took a different, and somewhat confounding, approach. Plaintiff did not offer an interpretation of the intrinsic evidence and instead relied on the conclusions found in the declaration of its expert witness,[4] Dr. Allen, along with counsel's interpretation of the Federal Circuit's opinion in this matter, and this Court's

---

[4] The Federal Circuit, in remanding this case for further proceedings, observed that the trial court erred when it relied on Defendants' unrebutted expert report and "from [that] extrinsic evidence concluded that the "[r]eceiver [c]laims at issue here have the same requirements as the claims in *ParkerVision I*, including the 'generating limitation.'" *ParkerVision, Inc.*, 116 F.4th at 1356-57. The Federal Circuit criticized this Court because it "relied principally on extrinsic evidence, particularly Qualcomm's expert opinion. [Whereas t]he proper approach to determining claim scope is to 'look first to the intrinsic evidence of record, *i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Id.* at 1357.

denial of Defendant's motion for partial summary judgment on collateral estoppel from 2020. That is, instead of parsing the intrinsic evidence, Plaintiff relies on extrinsic evidence. Similarly, when discussing the '940 patent, ParkerVision relies on extrinsic evidence, including its Opening Appellate Brief, which is not part of the Court's record. In short, the Defendants submitted a claim construction brief, and the Plaintiff submitted a brief fashioned like a response to a motion for summary judgment.

## II.   LEGAL STANDARD

The Court construes a patent claim as a matter of law. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1330 (Fed. Cir. 2005) (en banc). The Federal Circuit directs district courts construing claim terms to focus on the intrinsic evidence—that is, the claims, specification, and prosecution histories—because intrinsic evidence is "the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Generally, the Court accords the words of a claim "their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312–13. Persons of ordinary skill in the art do not read the claim term in isolation, but in the context of the entire patent. *Id*. at 1313. If the ordinary meaning of claim language is "readily apparent even to lay judges," then claim construction requires "little more than the application of the

widely accepted meaning of commonly understood words." *Id*. at 1314. But because the meaning of a claim term as understood by a person skilled in the art is often not immediately apparent, the Court looks to both intrinsic evidence (the words of the claims themselves, the specification, and the prosecution history) and extrinsic evidence (sources such as dictionaries and expert testimony). *Id*.; *K-fee Sys. GmbH v. Nespresso USA, Inc.*, 89 F.4th 915, 919 (Fed. Cir. 2023); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1328 (Fed. Cir. 2008).

The patent's specification is "the single best guide to the meaning of a disputed term," as it may reveal that the patentee intended a special definition to apply to a claim term that differs from its ordinary meaning or that the patentee intentionally disclaimed or disavowed the claim's scope. *Phillips*, 415 F.3d at 1315–16 (internal quotation marks omitted). The Court also considers the prosecution history, which is created by the patentee to explain and obtain the patent. *Id*. at 1317. The prosecution history consists of the complete record of proceedings before the Patent and Trademark Office ("**PTO**") and the prior art cited during the examination of the patent. *Id*. Unlike the specification, which is a final product, the prosecution history is less useful in claim construction because it represents the ongoing negotiations between the PTO and the applicant. *Id*.

The Court also looks at the prosecution history "to determine whether the applicant clearly and unambiguously 'disclaimed or disavowed'" an interpretation of claim scope in order to obtain the patent grant. *Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002) (quoting *Standard Oil Co. v. Am.*

6

*Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)). A patentee disclaims an interpretation by "clearly characterizing the invention in a way to try to overcome rejections based on prior art," as opposed to simply describing features of the prior art without distinguishing the claimed invention based on those features. *Comput. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374–75 (Fed. Cir. 2008). Thus, the Court protects the public's reliance on the definitive statements made during the prosecution by precluding the patentee from "recapturing" an interpretation disclaimed during prosecution through claim construction. *Id.* at 1374 (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)).

Although "less significant than the intrinsic record," extrinsic evidence is helpful. *Phillips*, 415 F.3d at 1317 (internal quotation marks omitted). However, expert testimony about claim terms that is conclusory, unsupported, or "clearly at odds" with the intrinsic evidence is not useful. *Id.* at 1318 (internal quotation marks omitted). Moreover, while dictionaries and treatises are relevant, the Court must ensure that the dictionary definition does not contradict a definition "found in or ascertained by a reading of the patent documents." *Id.* at 1322–23 (quoting *Vitronics*, 90 F.3d at 1584 n.6). "In sum, extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319.

7

## III.   DISPUTED TERMS

### A.   whereby the energy provided to the load forms a down-converted signal

| Claim Term | ParkerVision's Proposal | Qualcomm's Proposal |
|---|---|---|
| whereby the energy provided to the load forms a down-converted signal | plain and ordinary meaning | whereby the energy provided to the load generates a down-converted signal |

Claim 1 of the '907 patent reads:

> What is claimed is:
>
> 1.  A method for down-converting an electromagnetic signal, comprising:
>
> periodically coupling an electromagnetic signal that includes a carrier signal to an energy storage device and a load, wherein the periodic couplings occur at a rate less than twice the frequency of the carrier signal;
>
> providing, during the periodic couplings, energy from the electromagnetic signal to the energy storage device, thereby changing an amount of energy stored by the energy storage device;
>
> providing, during the periodic couplings, energy from the electromagnetic signal to the load; and
>
> providing, between the periodic couplings, energy from the energy storage device to the load, thereby changing the amount of energy stored by the energy storage device;
>
> whereby the energy provided to the load forms a down-converted signal.

'907 patent at 130:63–131:14.

8

The Court should not provide a construction "beyond a phrase's plain terms where the phrase 'convey[ed] a meaningful limitation to a person of ordinary skill' in the art." *Omnia Med., LLC v. Painteq, LLC*, No. 8:22-cv-145-VMC-TGW, 2023 WL 4305224, at *4 (M.D. Fla. June 30, 2023) (quoting *Pediatric Med. Devices, Inc. v. Indiana Mills & Mfg., Inc.*, No. 1:11-cv-2613-TCB, 2013 WL 2395994, at *13 (N.D. Ga. Apr. 26, 2013)). ParkerVision advocates for the plain and ordinary meaning of "forms." (Doc. 796, p. 3). ParkerVision argues that the claim requires "'a down-converted signal' be *formed* in a load using energy taken directly from the electromagnetic signal, without charging and discharging a capacitor."[5] (*Id.*). ParkerVision quotes its retained expert, Dr. Allen, for the premise that the "load doesn't down-convert anything, it can just *shape* the down-converted signal provided to if from the switch and the energy storage device." (*Id.* at p. 6 (citing Doc. 327-1, ¶ 12) (emphasis added)). Therefore, ParkerVision relies on extrinsic evidence of the sort rejected by the Federal Circuit in concluding that "forms" means "shapes."

Qualcomm correctly frames the issue before the Court, as follows: "[t]he parties dispute whether the energy provided to the load *generates* a down-converted signal or whether the energy provided to the load *shapes* an already existing down-converted signal." (Doc. 798, p. 3). Qualcomm equates "forms" with "generates," and invites the Court to so construe the claim. ParkerVision, while

---

[5]     ParkerVision supports this interpretation of claim 1 of the '907 patent by citing the argument it presented in response to Qualcomm's motion for summary judgment based on collateral estoppel. (*See* Doc. 327, pp. 14–15).

advocating for the plain and ordinary meaning of "forms," fails to explain why a person of ordinary skill would understand "forms" to mean "shapes" as opposed to "generates," except to say the claims of the '907 lack generating limitations. (Doc. 796, pp. 5–7 (citing Dr. Allen's expert report)). Since "forms" is subject to more than one meaning, the Court is compelled to construe the claim term "whereby the energy provided to the load forms a down-converted signal."

### 1.     Qualcomm's Proposed Construction

Qualcomm contends that ParkerVision's assertion that claim 1 of the '907 patent recites a "down-converted electric current that flows directly to the load" is refuted by the claim language. (Doc. 798, p. 6). That is, while ParkerVision contends that a down-converted signal is somehow generated and exists in the "providing, during the periodic couplings" limitation,[6] Qualcomm avers that the claim language itself does not recite a "down-converted signal" in those limitations. (*Id.*). Qualcomm argues the claim language never references a down-converted signal prior to the energy being provided to the load.[7] (*Id.*). Qualcomm submits

---

[6]     Stated differently, ParkerVision contends that when "a down-converted signal" is first recited in claim 1 in conjunction with "forms," the down-converted signal already exists and is merely shaped. (Doc. 796, pp. 6-7).

[7]     Claim 1 provides that "during periodic couplings, energy from the electromagnetic signal to the energy storage device, thereby changing an *amount* of energy stored by the energy storage device" and that "during the periodic couplings, energy from the electromagnetic signal to the load" and further that "between the periodic couplings, energy from the energy storage device to the load, thereby *changing* the *amount* of energy stored by the energy storage device." '907 patent at 131:3–12 (emphasis added). However, as Qualcomm notes, the claim language does not specify that this energy is already a down-converted signal. (Doc. 798, p. 7). That is, the claim language does not provide that a change in the *amount* of energy equates with a down-conversion of the signal.

that the only logical interpretation of "the energy provided to the load forms a down-converted signal" is that the signal is being generated. (*Id.* at p. 7).

Qualcomm notes that "forms" is not discussed in the '907 patent in conjunction with "shape" or "shaping." (*Id.* at p. 8). Qualcomm also avers that the specification supports its construction of "forms" as "generates" (*Id.*). Qualcomm argues that Figure 83D "illustrates a down-converted signal **8310** that is formed by energy transferred from the input EM signal **8302**." (*Id.*; '907 patent at 69:21–23). Qualcomm avers that "FIG. 83D illustrates the transferred energy stored in the storage module **6506**. The storage module **6506** outputs the transferred energy as the down-converted signal **1308**B. (Doc. 798, pp. 8–9; '907 patent at 100:4–7). Qualcomm points to Figure 82A as evidence of a down-converted signal using transferred energy. (Doc. 798, p. 9). Qualcomm also observes that in *ParkerVision I,* the Plaintiff in its Corrected Nonconfidential Brief, No. 3:11-cv-00719-RBD-JRK, 2014 WL 4802308, at *16–19, 30–31 (Fed. Cir. Sept. 15, 2014), relied on FIG. 82A of the '551 patent to describe a "generating" down-converted signal using energy stored in a capacitor.[8] (*Id.* at p. 9). While ParkerVision's appellate brief in *ParkerVision I* constitutes extrinsic evidence, ParkerVision's prior interpretation of Figure 82A corroborates Qualcomm's interpretation. Moreover, Figure 82A contradicts ParkerVision's assertion that "literally nothing"

---

[8]   Qualcomm correctly identifies the '907 patent as a continuation-in-part of the '551 patent which incorporates by reference the '551 patent. (Doc. 798, p. 9; '907 patent at 1:6–18). Figure 82A in the '907 patent and '551 patent is identical. ParkerVision does not dispute this contention.

11

in the intrinsic record supports Qualcomm's interpretation of "forms" to mean "generates." (Doc. 796, pp. 9–10). That is, if Figure 82A describes a "generated" down-converted signal using energy stored in a capacitor, the signal is not already down-converted during the periodic couplings and thereafter merely shaped.

Similarly, the specification describes the signal in Figure 57E as a "generated" signal: "FIG. 57E illustrates a demodulated baseband signal S712, which is generated by the down-conversion process." ('907 patent at 87:9–10). And Qualcomm contends that Figure 57E "illustrates a demodulated baseband signal S712, which is generated by the down-conversion process." (Doc. 798, p. 9; '907 patent at 87:9–10). The intrinsic evidence, thus, supports Qualcomm's construction of "forms" as "generates."

### 2. *ParkerVision's Proposed Construction*

ParkerVision asserts that "the '907 claims require that the 'energy provided to the load,' which 'forms a down-converted signal,' comes not only from an energy storage device but also from the electromagnetic signal itself." (Doc. 796, p. 6). As previously noted, the Plaintiff cites as support its own Memorandum in Opposition to Qualcomm's first Collateral Estoppel Summary Judgment Motion and its retained expert's report. (*Id.*; Doc. 327). The Federal Circuit found this Court erred by relying principally on "extrinsic evidence, particularly Qualcomm's expert opinion," and instructed the Court to "look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specifications and, if in evidence, the prosecution history." *ParkerVision, Inc.*, 116 F.4th at 1357.

ParkerVision relies on its expert's interpretation of claim 1 wherein the expert opined that "during the periodic couplings (i.e. *when the switch is closed*) energy from the *already down-converted-by-the-switch signal* goes to *both* the 'energy storage device' (like a capacitor) and 'the load.'" (Doc. 796, p. 6). The claim language does not include the highlighted text, and ParkerVision fails to explain how its expert's interpretation of the claim's limitations is supported by intrinsic evidence. ParkerVision, again relying on its expert's interpretation of the claim language, states that "between the periodic couplings' (i.e. *when the switch is open*) energy from the *already down-converted-by-the-switch signal*, *previously stored* in the 'energy storage device,' is then provided to the load' 'forms a down-converted signal.'" (*Id.* at p. 7). Again, the italicized language is not found in the claim language. To demonstrate this concept, the Plaintiff inserts a diagram that does not originate from the specification but was created by its retained expert. (*Id.*).

ParkerVision is forced to construe the claim language to teach that the energy is "already down-converted-by-the-switch signal" for the word "forms" to mean "shapes" as opposed to "generates." The problem is that the claim language does not state this, and ParkerVision does not point to the specification to support its construction. ParkerVision, however, concedes that the energy must be down-converted at some point, and if the energy is not "*already down-converted-by-the-switch signal*" before it reaches the capacitor, then the last limitation of claim 1 teaches the energy generates, *i.e., "forms,"* a down-converted signal after the load.

ParkerVision next submits that this Court and the Federal Circuit have determined that the claims at issue here are different from the claims at issue in *ParkerVision I*. (*Id.* at pp. 2, 9). However, the issue before this Court and the Federal Circuit was whether a material issue of fact is present that precludes summary judgment, and neither court was engaged in claim construction. ParkerVision further claims that the Federal Circuit held that a "generating" limitation is not present in claim 1 of the '907 patent. (*Id.* at p. 9). ParkerVision reads too much into the Federal Circuit's opinion remanding the case back to this Court. The Federal Circuit rejected Qualcomm's suggestion that ParkerVision invited the district court's error in failing to construe the claims, finding that Qualcomm was obligated to request claim construction where it sought to read into the receiver claims the generating limitation that is not expressly recited in the claims. *ParkerVision, Inc.*, 116 F.4th at 1364 n.4. The Federal Circuit did not, however, construe claim 1 of the '907 patent and exclude a generating limitation; rather, it merely noted that the limitation is not *expressly* recited. The Federal Circuit then directed the instant Court to conduct any necessary claim construction, which makes no sense if the Federal Circuit already constructed the limitations of claim 1. The Court again emphasizes that the Federal Circuit was reviewing whether this Court erred by granting summary judgment; the Federal Circuit was not reviewing this Court's claim construction Order.

ParkerVision's next argument, like the previous one, departs from an analysis of the intrinsic evidence and focuses on the Court's ruling on Qualcomm's

motion for summary judgment on collateral estoppel. (Doc. 796, pp. 10–11). Plaintiff submits that this Court previously agreed with its explanation that claim 1 of the '907 patent does "not require a baseband signal and [does] not require any signal to be 'generated' using an 'energy storage device' to down-convert a high frequency signal." (*Id.* at p. 11). ParkerVision highlights that this Court credited its arguments in holding the Defendants failed "to show that there is no material difference between the patents-at-issue in *ParkerVision I* and the claims now asserted by ParkerVision, that is, the identity of the issues." (*Id.*).

The Plaintiff's reliance on arguments advanced in relation to Defendants' motion for partial summary judgment based on collateral estoppel is not helpful in construing the limitations found in claim 1 of the '907 patent. ParkerVision argued in response to Qualcomm's motion for partial summary judgment that the asserted claims of the '907 patent differ from the claims at issue in *ParkerVision I*. (Doc. 327, p. 11). This Court denied Qualcomm's motion for summary judgment because it failed to present sufficient evidence that the accused product here and in *ParkerVision I* are essentially the same. (Doc. 348, p. 13). ParkerVision also argued in opposition to Qualcomm's motion for partial summary judgment that the '907 claims teach that the "energy provided to the load," which "forms a down-converted signal," come from an energy storage device and "also from the electromagnetic signal itself." (Doc. 327, p. 17). ParkerVision's response to Defendants' motion for partial summary judgment relied on the sworn declaration of Dr. Allen who opined that claim 1 of the '907 patent describes "energy that is

15

provided to the load (during periodic couplings) from the electromagnetic signal, without passing through the energy storage device." (Doc. 327-1, ¶ 12). While Dr. Allen's declaration constitutes extrinsic evidence in a claim construction proceeding, this Court found it was sufficient to create a material issue of fact precluding summary judgment. (Doc. 348, p. 18).

ParkerVision's reliance on its brief in response to a motion for summary judgment and its citation to its retained expert's conclusions do not inform whether the intrinsic evidence supports ParkerVision's position that "forms" means "shape/shapes." The Federal Circuit made clear in its recent opinion that reliance on an expert's declaration without first consulting intrinsic evidence is error. Moreover, this Court did not "agree" with ParkerVision's explanation of whether a generating limitation exists in claim 1 of the '907 patent. This Court merely found that in the context of a motion for summary judgment, a material issue of fact exists.[9]

Finally, ParkerVision contends that the Court should reject Qualcomm's argument that ParkerVision's reliance on "Figure 82A to describe *generating* a down-converted signal using transferred energy, and Figures 57E and 57F to describe examples of a *shaped* signal—is contrary to ParkerVision's characterization of the asserted claims and [therefore is] supportive of 'reading-in'

---

[9] The Federal Circuit was not construing the claim limitations at issue when it found that "*[a]bsent a claim construction* finding a generating limitation or similar requirement to be part of the claims, the Qualcomm accused products might infringe the receiver claims in this action even if they are found to down-convert the signal before the capacitor." *ParkerVision, Inc.*, 116 F.4th at 1359 (emphasis added).

the *generating* limitation language." (Doc. 796, p. 12). ParkerVision submits that the Federal Circuit rejected this argument when it found that ParkerVision's "generalized acknowledgements of some overlap between the claims [in *ParkerVision I* and *ParkerVision II*] do not, however, constitute admission that the patent claims themselves are materially the same in the two actions." (*Id.* (quoting *ParkerVision, Inc.*, 116 F.4th at 1360)).

Again, ParkerVision imports into its claim construction motion a ruling made in the context of a motion for summary judgment. The Federal Circuit did not hold that Qualcomm's reliance on the '907 patent specification does not support its construction of claim 1 as teaching a generating limitation. The Federal Circuit merely found that the overlap between the two patents is not enough to support collateral estoppel. Here, Qualcomm cites Figures 82A, 57E, and 57F as intrinsic evidence supporting its contention of a generating limitation, while noting that ParkerVision previously relied on the same Figures to teach generating, which is inconsistent with its current position.

Accordingly, the Court adopts the following construction:

| **whereby the energy provided to the load forms a down-converted signal** |
|---|
| whereby the energy provided to the load generates a down-converted signal |

17

**B.** **a storage device storing energy from said UFT module ('940 patent)**

| Claim Term | ParkerVision's Proposal | Qualcomm's Proposal |
|---|---|---|
| a storage device storing energy from said UFT module | No construction proposed | a storage device storing energy from said UFT module and using that energy to generate a down-converted signal |

*1.* *Qualcomm's Proposed Construction*

Qualcomm submits, correctly, that the issue is whether the claimed storage device ("**UFT module**") uses stored energy to generate a down-converted signal, or, as ParkerVision claims, the storage device merely stores energy from the UFT module, without any requirement that the stored energy be used for any purpose. (Doc. 798, p. 15). Qualcomm contends, and ParkerVision does not dispute, that both asserted claims 24 and 331 require "a storage device storing energy from said UFT module." '940 patent at 69:66–67. Qualcomm avers that the intrinsic and extrinsic records refute ParkerVision's contention that the claimed storage device merely stores energy from the UFT module without requiring the stored energy to be used for a specified purpose. (Doc. 798, p. 15). Qualcomm asserts that the storage device uses stored energy to generate a down-converted signal. (*Id.*).

Qualcomm begins where it should, with the intrinsic record. Qualcomm notes that claim 24 recites an approach to down-converting using a UFT module that requires "'aliasing' the signal and 'transferring energy' from the signal to a storage device." '940 patent, claim 24. And Qualcomm observes that the

18

specification instructs that the claimed form of down-conversion uses energy stored in the storage device to generate the down-converted signal, directing the Court to 57:27–58:19. (Doc. 798, p. 16). Section 6.3 of the specification is titled "Summary Description of Down-conversion Using a Universal Frequency Translation Module." (*Id.*). Qualcomm highlights two extracts from the specification that teach a "stored charge is used to generate down-converted signal" (*Id.* (citing '940 patent at 58:9-19)). The specification states that "[t]he train of pulses 6418 as shown in FIG. 64D controls the switch 6408 to alias the input signal 6404 with the control signal 6406 *to generate a down-converted output signal* 6412." (*Id.* (citing '940 patent at 58:9-19) (emphasis added)). Thus, Qualcomm argues, the claimed storage device does not merely store energy from the UFT module; rather, the stored energy is used to generate the down-converted signal. (*Id.*).

As if the specification was not sufficient to support Qualcomm's proposed construction, ParkerVision's inventors admit in deposition that the invention teaches using energy stored in the storage device to generate the down-converted signal. (*Id.* at p. 17 (first citing Doc. 499-29, 199:9–200:16; and then citing Doc. 499-31, 178:19–179:4)).[10] Moreover, Qualcomm's expert, Dr. Razavi, and ParkerVision's experts, Drs. Allen and Steer, agree that the receiver claims operate

---

[10] The deposition of Michael Bultman is filed under seal, and so the Court will not quote his testimony more precisely. The deposition of Robert Cook is not sealed, and he testified that on the "receiver side of things," the aperture to "transfer energy to the capacitor" and "then the down-converted signal was generated from the capacitor." (Doc. 499-11, 179:19–180:4).

in this manner. (*Id.* at pp. 17–18 (citing Doc. 527-2, ¶¶ 823–829; then citing Doc. 499-27, 216:21–219:25; and then citing 499-43, 74:18-24)).[11] Qualcomm is correct that "[a]n inventor is entitled to claim in a patent what he has invented, but no more . . . . Therefore, in construing a claim, there are two limiting factors—what was invented, and what exactly was claimed." (*Id.* at p. 17 (quoting *MySpace v. GraphOn*, 672 F.3d 1250, 1256 (Fed. Cir. 2012))). Here, the claims and specification teach that energy stored in the storage device is used to generate the down-converted signal, and ParkerVision's inventors and experts have confirmed this limitation was intended.

### 2. *ParkerVision's Proposed Construction*

ParkerVision submits that the Federal Circuit foreclosed Qualcomm's argument that the receiver claims of the '907 and '940 patents include a generating limitation. (Doc. 796, p. 15). As this Court noted while discussing the '907 patent, the Federal Circuit was analyzing whether summary judgment should have been granted and did not engage in claim construction.[12] Therefore, the Federal Circuit's observation does not foreclose Qualcomm's contention that the intrinsic record, supported by the extrinsic record, supports the inclusion of a generating limitation.

---

[11] The depositions of Drs. Allen and Steer are filed under seal, and as such, the Court will not quote from either deposition.

[12] The Federal Circuit specifically stated that "[t]he parties have not provided us with claim construction briefing" and "[t]hus, on remand, the district court should undertake any necessary claim construction and then determine whether the receiver claims asserted in this case have the same requirement as the generating limitation of the claims at issue in *ParkerVision I*." *ParkerVision Inc.*, 116 F.4th at 1360.

20

ParkerVision next argues that no intrinsic evidence supports Qualcomm's proposed construction. (*Id.*). ParkerVision cites its Opening Appellate Brief for the following assertion:

> Claim 22 of the '940 patent recites an 'apparatus for communicating' that includes both a 'transmitting subsystem' and a 'receiving subsystem'. . . . Claim 24 then further describes the 'receiving subsystem as including 'an aliasing module' which further includes, in relevant part, 'a universal frequency translation (UFT) module' that 'down-convert[s]' and 'electromagnetic signal.'

(*Id.* at p. 16). ParkerVision's reliance on extrinsic evidence, *i.e.*, its Opening Appellate Brief, without citing the patent, violates the Federal Circuit's admonition that, first and foremost, claim construction starts with the claim language. Absent citation to the patent, the Court cannot discern whether ParkerVision's "construction" is mere argument. For example, without citation to specific claim language and without regard to the specification, ParkerVision proclaims that "[t]he intrinsic evidence shows that the UFT includes nothing more than a switch, and clearly that there is no energy storage device in the UFT." (*Id.*). ParkerVision's argument boils down to citing its appellate brief and the conclusory assertion that the intrinsic evidence supports its preferred construction. ParkerVision conveniently ignores the specification cited by Qualcomm and disregards the testimony of its inventors and experts, all of which teach that the energy stored in the storage device is used to generate the down-converted signal.

Accordingly, the Court adopts the following construction:

21

| **a storage device storing energy from said UFT module ('940 patent)** |
|---|
| a storage device storing energy from said UFT module and using that energy to generate a down-converted signal |

## IV.   CONCLUSION

For these reasons, the disputed claims are construed as set forth in this Order. Consistent with the scope of the remand, the Court will allow the parties to resubmit briefing on summary judgment with a separate scheduling order to follow.

**DONE AND ORDERED** in Orlando, Florida on May 29, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

22

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PARKERVISION, INC.,

             Plaintiff,

    v.

QUALCOMM INCORPORATED and
QUALCOMM ATHEROS, INC.,

             Defendants.

Case No. 6:14-cv-687-PGB-LHP

## QUALCOMM'S UNOPPOSED MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT AND DISMISSAL WITHOUT PREJUDICE OF INVALIDITY COUNTERCLAIMS

## I.    INTRODUCTION

Defendants Qualcomm Incorporated and Qualcomm Atheros, Inc. (collectively, "Qualcomm") respectfully move for (1) entry of partial summary judgment of noninfringement of claims 1 and 10 of U.S. Patent 7,218,907 (the "'907 Patent") and claims 24 and 331 of U.S. Patent 6,091,940 (the "'940 Patent") (collectively, the "Receiver Claims") pursuant to Federal Rule of Civil Procedure 56(a) and (2) dismissal without prejudice, subject to renewal in the event of a reversal or remand, of Qualcomm's 2nd Counterclaim for Invalidity as it pertains to claims 24 and 331 of the '940 Patent and Qualcomm's 16th Counterclaim for Invalidity of the '907 Patent.

1

2989539

## II.    LEGAL STANDARD

Courts must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The same standard applies to unopposed motions for summary judgment. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). The absence of a genuine dispute of material fact may be shown through "stipulations (including those made for purposes of the motion only)." Fed. R. Civ. P. 56(c)(1)(A).

## III.   ARGUMENT

Partial summary judgment of noninfringement of the Receiver Claims is warranted. The parties have entered into a joint stipulation agreeing that, for purposes of this motion, there is no material factual dispute that the Accused Products do not infringe the Receiver Claims as construed by the Court in the Court's May 29, 2025, claim construction order (Dkt. No. 804). *See* Ex. A. That stipulation satisfies the requirements of Rule 56 and supports entry of partial summary judgment in favor of Qualcomm as to ParkerVision's claims regarding infringement of the Receiver Claims and as to Qualcomm's corresponding counterclaims of noninfringement of those claims. *See* Fed. R. Civ. P. 56(c)(1)(A); *Groove Digit., Inc. v. United Bank*, 825 F. App'x 852, 853 (Fed. Cir. 2020) (affirming summary judgment based upon joint stipulation of noninfringement).

2

2989539

Partial summary judgment of noninfringement of the Receiver Claims, if granted by the Court, will make adjudication of Qualcomm's counterclaims for invalidity of the Receiver Claims unnecessary. Accordingly, subject to the Court granting summary judgment of noninfringement, and subject to the counterclaims being automatically renewed in the event of any reversal or remand order impacting the Receiver Claims, Qualcomm also seeks dismissal without prejudice of its counterclaims for invalidity of the Receiver Claims. *See Nystrom v. TREX Co., Inc.*, 339 F.3d 1347, 1351 & n.* (Fed. Cir. 2003) (court may "dismiss[ ]… counterclaim without prejudice (either with or without a finding that the counterclaim was moot) following the grant of summary judgment of non-infringement").

For the avoidance of any doubt, this unopposed motion addresses all of the remaining asserted receiver claims in the case, but it does not address ParkerVision's claims or Qualcomm's counterclaims as to the remaining asserted transmitter claims, asserted claims 25, 26, 368, and 369 of the '940 Patent (collectively, the "Transmitter Claims"). Also, for the avoidance of any doubt, this motion seeks only partial summary judgment on noninfringement under Rule 56(a) and does not seek entry of final judgment under Rule 54(b). To the extent ParkerVision wishes to seek entry of a final judgment under Rule 54(b) with respect to the Court's ruling on this motion, it may do so by

3

2989539

filing a separate motion. Qualcomm reserves all rights to oppose any such request.

## IV. CONCLUSION

For the foregoing reasons, Qualcomm respectfully requests that the Court grant this unopposed motion and enter (1) an order of partial summary judgment in Qualcomm's favor of noninfringement of the Receiver Claims and (2) an order dismissing without prejudice, subject to renewal in the event of a reversal or remand, of Qualcomm's counterclaims for invalidity of the Receiver Claims.

### Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), the parties met and conferred on June 20, 2025, and conferred by email between June 12 and 24, 2025, regarding the substance of Qualcomm's motion for partial summary judgment and the joint stipulation of noninfringement. ParkerVision does not oppose the motion or the requested relief.

Dated: June 25, 2025

Respectfully Submitted,

**KEKER, VAN NEST & PETERS LLP**
*By: /s/ Robert A. Van Nest*
Robert A. Van Nest (special admission)
Matthew M. Werdegar (special admission)

4

2989539

Sophie Hood (special admission)
Anjali Srinivasan (special admission)
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile:  415 397 7188
rvannest@keker.com
mwerdegar@keker.com
shood@keker.com
asrinivasan@keker.com

**CARLTON FIELDS, P.A.**
Daniel C. Johnson
Florida Bar No.  522880
200 S. Orange Ave.
Suite 1000
Orlando, FL 32801
Telephone: (407) 849-0300
Facsimile:  (407) 648-9099
djohnson@carltonfields.com

**COOLEY LLP**
Matthew Brigham (admitted pro hac vice)
Dena Chen (admitted pro hac vice)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Facsimile:  (650) 843-7400
Dchen@cooley.com
Mbrigham@cooley.com

**COOLEY LLP**
Eamonn Gardner (pro hac vice)
1144 15th Street, Suite 2300
Denver, CO 80202-2686
Telephone: (720) 566-4000
Facsimile:  (720) 566-4099
Egardner@cooley.com

Attorneys for Defendants QUALCOMM INCORPORATED and QUALCOMM ATHEROS, INC.

5

## CERTIFICATE OF SERVICE

I certify that on June 25, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM / ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM / ECF participants: none.


*/s/ Robert A. Van Nest*
Robert A. Van Nest

6

2989539

# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF FLORIDA

# ORLANDO DIVISION

PARKERVISION, INC.,

    Plaintiff,

    v.

QUALCOMM    INCORPORATED,
and QUALCOMM ATHEROS, INC.,

    Defendants.

Case No. 6:14-cv-00687-PGB-LHP

## PARKERVISION'S MOTION TO:

1. **ENTER STIPULATED FINAL JUDGMENT OF NONINFRINGEMENT OF THE RECEIVER CLAIMS UNDER RULE 54(b); AND**

2. **SEVER AND STAY THE REMAINING CLAIMS PENDING APPEAL OF THE COURT'S CLAIM-CONSTRUCTION ORDER (DKT. 804).**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................ 1

II. BACKGROUND.................................................................................. 4

    A.  The Court's 2025 Claim-Construction Order ...................................... 4

    B.  The Parties' Noninfringement Stipulation ........................................ 4

III. DISCUSSION ................................................................................... 4

    A.  The Court should enter a Rule 54(b) final judgment of noninfringement of the Receiver Claims. ............................................ 4

        1.  There are multiple claims for relief pending. ........................... 5

        2.  The 2025 Claim-Construction Order and the parties' Stipulation finally decided the infringement of the Receiver Claims............................................................................ 6

        3.  There is no just reason to delay directing final judgment on ParkerVision's Receiver Claims................................................ 8

    B.  The Court should stay the rest of the case pending ParkerVision's appeal of the Court's 2025 Claim-Construction Order........................11

        1.  A stay would not prejudice Qualcomm...................................13

        2.  ParkerVision will endure substantial hardship if the remaining claims are not stayed. ............................................13

        3.  A stay would simplify the case. .............................................14

IV. CONCLUSION.................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Askan v. FARO Technologies, Inc.*,
Case No. 6-23-cv-00920, Dkt. 55 (M.D. Fla. July 24, 2023) (Byron, J.) .............12

*Clinton v. Jones*,
520 U.S. 681 (1997)..................................................................................................11

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
446 U.S. 1 (1980) .......................................................................................................8

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)..................................................................................................12

*Lava Trading, Inc. v. Sonic Trading Management, LLC*,
445 F.3d 1348 (Fed. Cir. 2006) .................................................................................6

*ParkerVision v. Qualcomm*,
903 F.3d 1354 (Fed. Cir. 2018) ...............................................................................10

*ParkerVision, Inc. v. Qualcomm Inc.*,
621 F. App'x 1009 (Fed. Cir. 2015)..........................................................................10

*PayRange, Inc. v. KioSoft Techs., LLC*,
No. 1:20-CV-20970, 2023 WL 6115234 (S.D. Fla. July 31, 2023).......................10

*Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*,
836 F. App'x 895 (Fed. Cir. 2020).......................................................................5, 8

*United Techs. Corp. v. Heico*,
60 F. Supp. 2d 1306 (S.D. Fla. 1999).......................................................................11

*United Techs. Corp. v. Mazer*,
No. 05-80980-CIV, 2006 WL 8433630 (S.D. Fla. Sept. 13, 2006), *aff'd*, 556
F.3d 1260 (11th Cir. 2009).......................................................................................10

*W.L. Gore & Assoc., Inc. v. Int'l Med. Prosthetics Rsch. Assoc., Inc.*,
975 F.2d 858 (Fed. Cir. 1992) ...........................................................................6, 7, 8

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 54(b) ............................................................... passim

U.S. Patent 6,091,940 ................................................................................... 1, 10

U.S. Patent 7,218,907 .................................................................................... 1

## I.    INTRODUCTION

ParkerVision moves the Court to enter final judgment of noninfringement on the Receiver Claims asserted against Qualcomm under Federal Rule of Civil Procedure 54(b).[1] This request follows the Court's May 29, 2025 Claim-Construction Order (Dkt. 804) (the "2025 Claim-Construction Order"), Qualcomm's Unopposed Motion For Partial Summary Judgment (Dkt. 809), and the parties' June 25th Stipulation to Noninfringement of the Receiver Claims (Dkt. 809-1) (the "Stipulation"). ParkerVision further requests that the Court stay all remaining claims pending ParkerVision's appeal of the Court's 2025 Claim-Construction Order to avoid duplicative trials involving overlapping witnesses and to promote judicial economy.

This case stands at an important crossroads, where the Court is asked to consider whether to proceed with summary judgment and trial limited to the Transmitter Claims[2] or to enter a Rule 54(b) judgment and stay the Transmitter Claims, thereby permitting an immediate appeal of the 2025 Claim-Construction Order. ParkerVision does not seek to relitigate the 2025 Claim-Construction Order here, nor does it intend to diminish the Court's analysis. At the same time, the Federal Circuit's prior actions and statements suggest that it may interpret the claims differently than the Court did in the 2025 Claim-Construction Order—and, if it does, the parties will be faced with the prospect of a second trial on the Receiver Claims. For

---

[1] The "Receiver Claims" are U.S. Patent 6,091,940 claims 1 and 10 and U.S. Patent 7,218,907 claims 24 and 331.

[2] The "Transmitter Claims" are US Patent 6,091,940 claims 25, 26, 368, and 369.

1

example, had the Federal Circuit previously understood the claims to include a generating limitation, it likely would have applied issue preclusion and affirmed summary judgment. These points are raised not as criticisms, but to underscore that the 2025 Claim-Construction Order ruling is, at a minimum, subject to reasonable disagreement, and that there is a material chance of reversal on appeal.

Given the real possibility that the Federal Circuit may reverse the 2025 Claim-Construction Order, ParkerVision believes that proceeding with a transmitter-only trial would not serve the interests of efficiency or finality. Such a trial would entail nearly all the costs and burdens of a full trial, would involve many of the same fact and expert witnesses, but would address only some of the claims at issue.[3] Although there may be some reduction in the scope and duration of expert testimony, all the same experts are likely to be called to testify, and the overall scope, duration, and complexity of the trial would remain largely unchanged.[4] Then, depending on how the case and subsequent appeal progress, there may be a second trial on the Receiver Claims, which would involve the same fact and expert witnesses.

ParkerVision submits that granting Rule 54(b) judgement and a stay would not

---

[3] In a transmitter-only trial, ParkerVision anticipates calling each of the same fact and expert witnesses in its disclosure of likely trial witnesses provided before the 2025 Claim-Construction Order. Dkt. 741-1.

[4] ParkerVision and Qualcomm each have a single technical expert to address infringement and validity of the Receiver and Transmitter Claims. ParkerVision and Qualcomm each also have a single economic expert to address damages issues related to the Receiver and Transmitter Claims. These four expert witnesses would still need to be called in a transmitter-only case, but the scope of their testimony would not include receiver-only related issues.

2

prejudice any party. The only potential consequence would be further delay in trying the transmitter claims—which is necessarily more prejudicial to ParkerVision than to Qualcomm.[5] However, in the context of a case that has already spanned more than a decade, some additional delay is a reasonable tradeoff for the opportunity to achieve a comprehensive and final resolution of all claims, and to avoid the potential for multiple trials involving overlapping witnesses. ParkerVision is prepared to request that the Federal Circuit expedite the appeal, with the goal of minimizing any delay.

The practical alternatives are clear: a transmitter-only trial at a time set by the Court (either later this year or early next year), potentially followed by a second trial at some future date if the 2025 Claim-Construction Order is reversed on appeal after the transmitter-only trial, or an immediate appeal now and a single, final trial most likely in 2027 (depending on whether the Federal Circuit agrees to expedite the appeal). The short-term delay associated with an immediate appeal is far outweighed by the potential to avoid years of additional litigation, the prospect of multiple trials, and the burdens of presenting the same witnesses in multiple trials. Even if the appeal proposed here is unsuccessful, a decision from the Federal Circuit would bring finality to a significant part of the case and could facilitate a complete resolution.

At bottom, the material chance of reversal, the inefficiency of a transmitter-only trial followed by the possibility of a second receiver-only trial, and the practical benefits

---

[5] All the patents-in-suit have expired, so Qualcomm will not accrue any additional potential damages during the stay and appeal proposed here.

of a Rule 54(b) judgment and stay all support allowing an immediate appeal of the

2025 Claim-Construction Order. ParkerVision believes this approach best serves the

interests of judicial economy, fairness, and the parties' shared interest in a final

resolution.

## II.     BACKGROUND

### A.     The Court's 2025 Claim-Construction Order

On May 29, 2025, the Court issued an Order construing key terms in the

Receiver Claims, including "whereby the energy provided to the load forms a down-

converted signal" and "a storage device storing energy from said UFT module." *See*

Dkt. 804. The Court adopted constructions requiring that the energy provided to the

load "generates" a down-converted signal and that the storage device "uses that energy

to generate a down-converted signal." *Id.* These constructions preclude infringement

of the Receiver Claims, for much the same reason that non-infringement was found at

JMOL and on appeal in *ParkerVision I*. *See* Dkt. 809-1 (Stipulation) at 2.

### B.     The Parties' Noninfringement Stipulation

Following the Court's 2025 Claim-Construction Order, ParkerVision and

Qualcomm stipulated that, under the Court's constructions, the accused Qualcomm

products do not infringe the asserted Receiver Claims. *See id*. This stipulation leaves

no dispute about the Receiver Claims and paves the way for final judgment.

## III.    DISCUSSION

### A.     The Court should enter a Rule 54(b) final judgment of noninfringement of the Receiver Claims.

"For Rule 54(b) to apply, three prerequisites must be met: '(1) multiple claims for relief or multiple parties must be involved; (2) at least one claim or the rights and liabilities of at least one party must be finally decided; and (3) the district court must find that there is no just reason for delaying an appeal.'" *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F. App'x 895, 897 (Fed. Cir. 2020) (quoting *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 841 F.3d 1334, 1347 (Fed. Cir. 2016)).

The prerequisites for a Rule 54(b) judgment are satisfied here. First, this case involves multiple claims for relief. ParkerVision asserts several counts of patent infringement against Qualcomm, and Qualcomm responds with corresponding counterclaims. Counts concerning the Receiver Claims have been resolved by the Court's 2025 Claim-Construction Order and the parties' Stipulation, while the rest related to the Transmitter Claims remain pending. Second, the Court's 2025 Claim-Construction Order and the parties' Stipulation of Noninfringement have fully and finally adjudicated infringement for the Receiver Claims, leaving no disputes as to those claims and satisfying the finality requirement for a Rule 54(b) judgment. Third, there is no just reason to delay entry of final judgment on the Receiver Claims under Rule 54(b), as the remaining claims related to the Transmitter Claims are distinct, judicial efficiency will be served, and the equities favor prompt appellate review, which could potentially resolve or moot further litigation on related counterclaims.

### 1. There are multiple claims for relief pending.

This case satisfies the first prerequisite for the application of Rule 54(b) because it involves multiple claims. ParkerVision has asserted numerous counts of patent

5

infringement against Qualcomm. In response, Qualcomm has asserted corresponding counterclaims of invalidity and noninfringement for each of the asserted claims. *See* Dkt. 26 (PV Complaint) at ¶¶42-58, 378-394; Dkt. 75 (QC Answer) at 63, 66. The Court's 2025 Claim-Construction Order disposes of all counts pertaining to the Receiver Claims, as the parties' Stipulation confirms. But, ParkerVision's claims relating to the infringement of the Transmitter Claims, as well as Qualcomm's associated counterclaims, remain pending.

### 2. The 2025 Claim-Construction Order and the parties' Stipulation finally decided the infringement of the Receiver Claims.

"In order for Rule 54(b) to apply, the judgment must be final with respect to one or more claims. A judgment is not final for Rule 54(b) purposes unless it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *W.L. Gore & Assoc., Inc. v. Int'l Med. Prosthetics Rsch. Assoc., Inc.*, 975 F.2d 858, 861-62 (Fed. Cir. 1992) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)); *see also id.* at 863 ("a district court's judgment is final where it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment'") (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). Here, the Court's 2025 Claim-Construction Order and the Stipulation end litigation on the merits for ParkerVision's infringement claims and Qualcomm's counterclaims for the Receiver Claims. Thus, this case satisfies the second prerequisite for a Rule 54(b) judgment. *See Lava Trading, Inc. v. Sonic Trading Management, LLC,* 445 F.3d 1348, 1350–51 (Fed. Cir. 2006) (finding that the court had jurisdiction over appeal from a stipulation of

6

noninfringement where district court entered a Rule 54(b) judgment for the infringement issues, even though accused infringer's counterclaims of invalidity and unenforceability remained pending).

The Federal Circuit's decision in *Gore* is informative. There, the district court entered judgment against the patentee, finding the accused infringer did not infringe the patent, the patent was invalid, and the patentee was subject to laches. *Gore*, 975 F.2d at 860. The accused infringer had also asserted a defense of patent misuse and a multi-count antitrust counterclaim, but those had not been tried at the time the court entered a final judgment under Rule 54(b). *Id.* The Federal Circuit rejected the accused infringer's argument against using Rule 54(b). It held that "because the infringement claim and several dispositive defenses were ruled upon, the district court's judgment was final" as to the patent infringement claim. *Id.* at 863. "Rule 54(b) certification is proper because the infringement claim was finally adjudicated and there is more than one claim for relief." *Id.* at 864.

As was true in *Gore,* a similar situation exists here with respect to the Receiver Claims. The Court's 2025 Claim-Construction Order provided a definitive interpretation of the relevant claim terms. *See* Dkt. 804 (2025 Claim-Construction Order); Section II.A, *supra*. Following that Order, the parties stipulated to noninfringement, agreeing that, under the Court's constructions, the accused products do not infringe the Receiver Claims. *See* Dkt. 809 (QC Unopposed Motion for Partial Summary Judgment); Dkt. 809-1 (Stipulation) at 2. This stipulation, in combination with the Court's claim constructions, conclusively resolved the issue of infringement

for the Receiver Claims—there are no remaining factual or legal disputes as to whether there is infringement of the Receiver Claims.

### 3. There is no just reason to delay directing final judgment on ParkerVision's Receiver Claims.

To direct entry of final judgment under Rule 54(b), "the court must make an express determination that there is no just reason for delay." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 3 (1980). Determining whether there is no just reason to delay the entry of a final judgment as to those claims is a matter of the Court's discretion. *Gore*, 975 F.2d at 862; *see also Curtiss-Wright*, 446 U.S. at 8 ("It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised 'in the interest of sound judicial administration.'" (internal citations omitted)); *Super-Sparkly*, 836 F. App'x at 897 (Federal Circuit "review[s] finality de novo" but "review[s] the district court's determination that there is no just reason for delay for abuse of discretion"). "[T]he task of weighing and balancing the contending factors is peculiarly one for the trial judge, who can explore all the facets of a case." *Curtiss-Wright*, 446 U.S. at 12. "[I]n deciding whether there are no just reasons to delay the appeal of individual final judgments … a district court must take into account judicial administrative interests as well as the equities involved." *Id.* at 8.

Here, judicial administrative interests favor entering a Rule 54(b) judgment. If ParkerVision were required to await a trial on the remaining claims before appealing the 2025 Claim-Construction Order on the Receiver Claims, a successful appeal by

8

ParkerVision would necessarily mean a *second trial* involving overlapping fact and expert witnesses as explained above. And even if ParkerVision does not prevail on its appeal of the 2025 Claim-Construction Order, then—following that unsuccessful appeal—the scope of any post-appeal trial would be the same as now (limited to the Transmitter Claims). In contrast, if ParkerVision can appeal the 2025 Claim-Construction Order now, then the Court could hold just *one trial* after the appeal concludes, no matter the appeal's outcome. The scope of that post-appeal trial would either include both the Transmitter and Receiver Claims (assuming the appeal is successful) or would be limited to the Transmitter Claims (if the appeal is not successful). Importantly however, there would be only one trial, which would prevent the waste of the Court's and the parties' time and resources in having to potentially try this case twice. Requiring the parties and the Court to undergo the burden of duplicative trials involving overlapping fact and expert witnesses would not only waste judicial resources but would also undermine the efficient administration of justice. Given the complexity and duration of this litigation, as well as the limited time allotted for trial, it is far more prudent to resolve all outstanding issues in one trial.

Further, there is substantial overlap between the anticipated witnesses for the Receiver Claims and the claims and counterclaims that remain pending for the Transmitter Claims. For example, if the case were tried twice, each of ParkerVision's anticipated fact and expert witnesses—including its CEO Jeff Parker, the lead inventor David Sorrells, and Greg Rawlins—would be required to testify at both trials, together with ParkerVision's economic expert John Bone and ParkerVision's technical expert

9

(either Dr. Steer or Dr. Ricketts depending on the Court's ruling on the pending motion to substitute (Dkt. 775)), resulting in duplicative testimony and increased burden on these individuals. *See* Dkt. 741-1 (ParkerVision's Amended Witness List). Similarly, Qualcomm's likely trial witnesses, including Dr. Behzad Razavi (its technical expert), Carla Mulhern (its economic expert), and Qualcomm engineers including Charles Persico, Kama Sahota, and Jim Jaffee would also likely need to testify at both trials. *See* Dkt. 742-1 (Qualcomm's Amended Witness List). "Thus, if the Federal Circuit were to remand, many of the same witnesses could be required to testify in two separate jury trials. Accordingly, judicial efficiency also weighs in favor of certification." *PayRange, Inc. v. KioSoft Techs., LLC*, No. 1:20-CV-20970, 2023 WL 6115234, at *4 (S.D. Fla. July 31, 2023); *see also United Techs. Corp. v. Mazer*, No. 05-80980-CIV, 2006 WL 8433630, at *1 (S.D. Fla. Sept. 13, 2006), *aff'd*, 556 F.3d 1260 (11th Cir. 2009) (taking into account how, if reversed, "[t]he same evidence and witnesses covered during the first trial against [a defendant] will substantially have to be repeated a second time during the [second] trial").

Finally, the equitable interests also favor entering a Rule 54(b) judgment. This case has been pending for more than ten years, has already been the subject of an appeal, and stems from a separate, earlier trial and appeal. *See ParkerVision, Inc. v. Qualcomm Inc.*, 621 F. App'x 1009 (Fed. Cir. 2015).[6] The protracted history and

---

[6] There is also a third related appeal affirming the validity of the asserted '940 Patent claims. *ParkerVision v. Qualcomm*, 903 F.3d 1354 (Fed. Cir. 2018)

complexity of this case weigh heavily in favor of finding no just reason to delay resolution. The equitable interests of the parties and the judicial system are best served by moving forward without further delay, particularly where the case has already consumed significant judicial resources, involved extensive discovery, and generated substantial costs for both sides. *See United Techs. Corp. v. Heico*, 60 F. Supp. 2d 1306, 1308–09 (S.D. Fla. 1999) ("[I]n considering equitable interests, the Court is not blind to the fact that this case, filed ten years ago in front of another judge, has taken an exceedingly long journey to its present pared down state."). The lengthy and complex journey of this litigation, much like the circumstances described in *United Technologies*, supports the conclusion that there is no just reason for delay.

Considerations of judicial economy and the equities demonstrate that there is "no just reason to delay" and that Rule 54(b) should apply in this case. Entering final judgment under Rule 54(b)—letting ParkerVision appeal the 2025 Claim-Construction Order now—is the most efficient way to proceed for both the Court and the parties.

### B. The Court should stay the rest of the case pending ParkerVision's appeal of the Court's 2025 Claim-Construction Order.

If the Court enters judgment under Rule 54(b) for the Receiver Claims, the Court should stay the remaining Transmitter Claims pending ParkerVision's appeal of the Court's 2025 Claim-Construction Order. District courts have broad discretion to stay cases. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."

11

*Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether a stay is appropriate, the court should consider factors such as whether the stay would unduly prejudice the nonmoving party, whether hardship or inequity would result to the moving party absent the stay, whether the stay would simplify or resolve the case, and the stage of the case at which the stay is requested. *Askan v. FARO Technologies, Inc.*, Case No. 6-23-cv-00920, Dkt. 55 at 2 (M.D. Fla. July 24, 2023) (Byron, J.). The Court should weigh whether granting a stay would further judicial economy and minimize needless time and effort expended by the litigants. *Id.*

Here, Qualcomm will not be prejudiced by a stay, as it has already informed ParkerVision that it did not want to try this case until 2026 at the earliest and damages will not accrue during the stay (since the patents-in-suit are expired). In contrast, ParkerVision would face significant hardship if the remaining claims are not stayed, including the risk of duplicative trials, inconsistent verdicts, the personal burden on witnesses who have to testify at multiple trials, and the economic burden of conducting multiple trials. Needless to say, ParkerVision is not a multi-billion dollar company and lacks Qualcomm's vast economic resources—meaning the burden of multiple trials weighs much more heavily on ParkerVision than Qualcomm.[7] Granting a stay would simplify the case, promote judicial efficiency, and minimize the risk of duplicative trials by allowing any appeal of the 2025 Claim Construction Order to be resolved

---

[7] Qualcomm reported over $30 Billion of revenue in 2024. *See* Qualcomm Inc., Annual Report (Form 10-K) (Nov. 6, 2024), https://d18rn0p25nwr6d.cloudfront.net/CIK-0000804328/fd08c4f6-61ba-4a6a-a339-0e3b522ed739.pdf.

12

before further trial activity occurs.

### 1. A stay would not prejudice Qualcomm.

Qualcomm cannot credibly claim that a stay would cause it prejudice, as it has repeatedly indicated that it is in no rush to go to trial. For instance, Qualcomm has told ParkerVision that it did not believe it could be trial ready before March of 2026. *See* Ex. 1 (Qualcomm's Position in the Draft Motion for Scheduling Conference) ("Qualcomm respectfully suggests March 2026"). And aside from any delay, Qualcomm would suffer no prejudice from a stay—each of the patents-in-suit has expired, meaning that no additional damages liability will accrue during the stay. Qualcomm would instead benefit in the same ways as ParkerVision. A stay would relieve Qualcomm of presenting its witnesses at two separate trials, thus avoiding unnecessary duplication and burden. Granting a stay would also promote a complete and orderly resolution of this protracted litigation, rather than prolonging the process further with a potential second trial.

### 2. ParkerVision will endure substantial hardship if the remaining claims are not stayed.

ParkerVision would face significant hardship if forced to go to trial on the rest of the case while it appeals the Court's 2025 Claim-Construction Order. Parallel trial and appellate proceedings would ensure the burden of two trials if ParkerVision is successful in its claim-construction appeal. And two trials would create inefficiencies, risk inconsistent verdicts, and increase burdens on all involved, including witnesses and the Court. Further, ParkerVision's technical expert is currently undergoing cancer

13

treatment, and a stay would let him focus on his health while letting the Court decide ParkerVision's substitution later. *See* Dkt. 770 (Motion For Reconsideration). A stay would also promote judicial economy and fairness—ensuring that both sides can fully present their case just once.

### 3. A stay would simplify the case.

Here, severing and staying the remaining claims pending appeal of the Receiver Claims will prevent the parties and the Court from engaging in potentially wasteful pretrial and trial proceedings multiple times. If a stay is not granted and the case goes to trial, a later Federal Circuit reversal of the 2025 Claim-Construction Order would necessitate a new trial on the Receiver Claims, resulting in duplicative trials.

## IV. CONCLUSION

ParkerVision asks the Court to enter final judgment of noninfringement on its Receiver Claims against Qualcomm under Rule 54(b), based on the 2025 Claim-Construction Order and the parties' Stipulation. ParkerVision also requests that all other claims be severed and stayed pending appeal to avoid duplicative trials.

14

Dated: June 25, 2025

Respectfully Submitted,

Allen, Dyer, Doppelt, & Gilchrist, PA
By: /s/ Ava K. Doppelt
Ava K. Doppelt
Fla. Bar No. 393738
255 S. Orange Ave – Ste. 1401
Orlando, FL 320801
Telephone: (407) 841-2330
Facsimile: (407) 481-2343
adoppelt@allendyer.com


McKool Smith, P.C.
By: /s/ Joshua W. Budwin
Joshua W. Budwin
Texas State Bar No. 24050347
John B. Campbell, Jr. (*pro hac vice*)
Texas State Bar No. 24036314
R. Mitch Verboncoeur (*pro hac vice*)
Texas State Bar No. 24105732
Matt Cameron (*pro hac vice*)
Texas State Bar No 240997451
303 Colorado Street, Suite 2100
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 592-8744
jbudwin@McKoolSmith.com
jcampbell@McKoolSmith.com
mverboncoeur@McKoolSmith.com
mcameron@McKoolSmith.com

Kevin L. Burgess (*pro hac vice*)
Texas State Bar No. 24006927
Jennifer Truelove (*pro hac vice*)
Texas State Bar No. 24012906
104 East Houston Street, Suite 300

Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099
kburgess@McKoolSmith.com
jtruelove@McKoolSmith.com

Ayana M. Rivers (*pro hac vice*)
New York State Bar No. 2956209
1301 Avenue of the Americas,
32ndFloor
New York, NY 10019
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
arivers@McKoolSmith.com


Attorneys for Plaintiff ParkerVision,
Inc.

**CERTIFICATE OF SERVICE**

I certify that on June 25, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: none.

/s/ Ava K. Doppelt
Ava K. Doppelt

**RULE 3.01(g) CERTIFICATION**

The undersigned certifies that counsel for ParkerVision conferred with counsel for Qualcomm via zoom on June 20, 2025. Counsel for ParkerVision requested Qualcomm's position on filing this motion. Qualcomm indicated it opposes the motion.

/s/ Joshua W. Budwin
Joshua W. Budwin

# EXHIBIT F

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

|  |  |
|---|---|
| PARKERVISION, INC., | Case No. 6:14-cv-687-PGB-LHP |
| Plaintiff, | |
| v. | |
| QUALCOMM INCORPORATED and QUALCOMM ATHEROS, INC., | |
| Defendants. | |

## QUALCOMM'S OPPOSITION TO PARKERVISION'S MOTION FOR RULE 54(B) FINAL JUDGMENT AND TO STAY REMAINING CLAIMS PENDING APPEAL

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................1

II. ARGUMENT ........................................................................................2

    A.    It is undisputed that there is no final decision as to the parties' '940 Patent claims. ...........................................................3

    B.    There are numerous "just reasons" to delay an appeal from the Receiver Claims until final judgment of all claims. .................7

        1.    The risk of a second trial cited by ParkerVision is inherent to *all* partially dispositive orders...........................8

        2.    The substantial evidentiary overlap between the Receiver and Transmitter Claims weighs *against* piecemeal appeal. ............................................................... 10

        3.    The equities support proceeding without delay towards a final adjudication on *all* claims. ....................... 12

    C.    If the Court were to enter Rule 54(b) final judgment, the Transmitter Claims should proceed to trial as scheduled........... 15

III. CONCLUSION.................................................................................. 15

i

2998912

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*,
841 F.3d 1334 (Fed. Cir. 2016).............................................................................2

*Chaparral Commc'ns, Inc. v. Boman Indus., Inc.*,
798 F.2d 456 (Fed. Cir. 1986)..............................................................................9

*Donnelly Corp. v. Gentex Corp.*,
95 F.3d 1168, 1996 WL 468452 (Fed. Cir. 1996)................................... 4, 5, 6

*Ebrahimi v. City of Huntsville Bd. of Educ.*,
114 F.3d 162 (11th Cir. 1997)................................................................. 2, 8

*Ferring B.V. v. Actavis, Inc.*,
2014 WL 5419055 (D. Nev. Oct. 23, 2014)................................................ 10

*Houston Indus. Inc. v. United States*,
78 F.3d 564 (Fed. Cir. 1996).............................................................................4

*iLOR, LLC v. Google, Inc.*,
550 F.3d 1067 (Fed. Cir. 2008).........................................................................7

*Indivior Inc. v. Dr. Reddy's Lab'ys S.A.*,
2020 WL 4932547 (D.N.J. Aug. 24, 2020) ................................................ 10

*Lite-Netics, LLC v. Nu Tsai Capital LLC*,
767 F. Supp. 3d 895 (D. Neb. Cir. 2025)................................................. 11, 13

*Maxell, Ltd. v. VIZIO, Inc.*,
2022 WL 2167459 (C.D. Cal. May 13, 2022) ............................................... 11

*Morgan v. Bill Vann Co.*,
2013 WL 5445632 (S.D. Ala. Sept. 30, 2013)................................................8

*Nystrom v. TREX Co.*,
339 F. 3d 1347 (Fed. Cir. 2003).........................................................................9

*Smithkline Beecham Corp. v. Apotex Corp.*,
2004 WL 634867 (E.D. Pa. Mar. 26, 2004) ............................................ 4, 6

ii

*Sperry Assocs. Fed. Credit Union v. Space Coast Credit Union*,
    2012 WL 4762128 (M.D. Fla. Oct. 5, 2012) ................................................. 10

*Sure-Safe Indus., Inc. v. C & R Pier Mfg.*,
    851 F. Supp. 1469 (S.D. Cal. 1993) ............................................................8

*TruePosition, Inc. v. Polaris Wireless, Inc.*,
    2015 WL 887935 (D. Del. Mar. 3, 2015) ....................................................6

*Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*,
    338 F.3d 1353 (Fed. Cir. 2003) ................................................................2

*W.L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Rsch. Assocs.,
    Inc.*,
    975 F.2d 858 (Fed. Cir. 1992) ............................................................ 3, 4, 7

**Rules**

Fed. R. Civ. P. 54(b) ..................................................................*passim*

## I.   INTRODUCTION

Disappointed by the outcome of the Court's May 29 Claim Construction Order, ParkerVision seeks immediate Federal Circuit review by way of a Rule 54(b) partial final judgment on some claims, as others remain pending before this Court.[1]   Rule 54(b) certification, however, is reserved for the exceptional case where a litigant's need for partial final judgment and immediate appeal is great enough to outweigh the well-established risks of duplicative and piecemeal appeals.

In this case, as an initial matter, there is no final decision for purposes of Rule 54(b) on the subset of claims that ParkerVision seeks to appeal. Additionally, ParkerVision stands in the shoes of every disgruntled claim construction litigant, and it has failed to identify a sound basis for why this case is so unusual that it should not proceed in the ordinary course towards a final judgment on all claims.   ParkerVision's Rule 54(b) Motion, therefore, should be denied on both procedural and substantive grounds, and the Court should proceed to hold trial on the remaining Transmitter Claims.[2]

---

[1] As a preliminary matter, ParkerVision's motion is premature.   Although Qualcomm has moved without opposition for partial summary judgment (ECF No. 809), this Court has not yet entered any order or judgment disposing of the Receiver Claims from which ParkerVision may request Rule 54(b) certification.

[2] For ease of reference, the capitalized terms in this Opposition refer to the same terms used in ParkerVision's motion, which include "Receiver Claims" and "Transmitter Claims."

1

## II.    ARGUMENT[3]

"Generally, in a case involving more than one claim, there is no final decision until a judgment is entered adjudicating all of the claims." *Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1357 (Fed. Cir. 2003). Federal Rule of Civil Procedure 54(b) provides a limited exception to this general rule, but that exception is reserved for the "unusual case" where litigants have demonstrated their "pressing needs . . . for an early and separate judgment as to some claims or parties." *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 166 (11th Cir. 1997). Three conditions must be met to invoke Rule 54(b): "(1) multiple claims for relief or multiple parties must be involved; (2) at least one claim or the rights and liabilities of at least one party must be finally decided; and (3) the district court must find that there is no just reason for delaying an appeal." *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 841 F.3d 1334, 1347 (Fed. Cir. 2016).

ParkerVision has not shown—and cannot show—that these conditions are satisfied in this case. While there are certainly multiple claims for relief at issue, the subset of claims that ParkerVision seeks to immediately appeal have not been finally decided. Even if that were not so, there is nothing about ParkerVision's circumstances that justify multiple consecutive appeals

---

[3] All internal quotation marks, citations, and alterations have been omitted, and all emphases added, unless noted.

2

(*i.e.*, now and again at final judgment) and injecting years of additional delay into this decade-old lawsuit. ParkerVision's cited reasons for invoking the Rule 54(b) exception are all either true of *any* interlocutory decision (*e.g.*, risk of two trials) or weigh *against* certifying a Rule 54(b) partial final judgment (*e.g.*, factual and witness overlap between the adjudicated and non-adjudicated claims).

The Court should deny ParkerVision's motion for a partial final judgment under Rule 54(b).

### A. It is undisputed that there is no final decision as to the parties' '940 Patent claims.

ParkerVision fails to address or even identify a threshold jurisdictional deficiency with its motion: there cannot be a "final judgment" of ParkerVision's '940 Patent cause of action that resolves only the asserted Receiver Claims but not the asserted Transmitter Claims.

As ParkerVision concedes, a "judgment is not final for Rule 54(b) purposes unless it is 'an ultimate disposition of an *individual claim* entered in the course of a multiple claims action.'" ParkerVision's Mot. ("Mot.") at 6 (quoting *W.L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Rsch. Assocs., Inc.*, 975 F.2d 858, 861–62 (Fed. Cir. 1992)), ECF No. 810. The district court's duty to ensure that a unitary cause of action has been fully and finally adjudicated is a "statutory mandate and not a matter of discretion." *Gore*,

3

975 F.2d at 862. Indeed, "the Supreme Court has emphasized that the 'District Court *cannot*, in the exercise of its discretion, treat as 'final' that which is not 'final' within the meaning of § 1291.'" *Id.*

But ParkerVision fails to acknowledge that the term "individual claim" in Rule 54(b) refers to a single cause of action, not individual *patent* claims. *See Donnelly Corp. v. Gentex Corp.*, 95 F.3d 1168 (Table), 1996 WL 468452, at *3 (Fed. Cir. 1996) ("The term 'claim' as used in Rule 54(b) refers, of course, to a claim in a cause of action, not to individual patent claims."); *see also Houston Indus. Inc. v. United States*, 78 F.3d 564, 567 (Fed. Cir. 1996) ("The resolution of individual issues within a claim does not satisfy the requirements of Rule 54(b)."). "[A]n action alleging infringement of multiple claims asserted under a single patent asserts a single claim for purposes of Rule 54." *Smithkline Beecham Corp. v. Apotex Corp.*, 2004 WL 634867, at *4 (E.D. Pa. Mar. 26, 2004). In short, under Rule 54(b), courts can only certify for appeal an *entire* cause of action, which in patent cases means all of the asserted claims of a patent-in-suit.

In its Motion, ParkerVision asserts that the parties' summary judgment stipulation would "end litigation on the merits . . . for the Receiver Claims." Mot. at 6. That's true. But ending litigation on "Receiver Claims" does *not* equate to ending litigation on the '940 Patent, where the parties are still contesting both infringement and validity of the Transmitter Claims.

4

*See* Mot. at 1 n.1, n.2 (defining "Receiver Claims" and Transmitter Claims" as both containing '940 claims); *see also* ECF No. 26 (First Am. Compl. for Patent Infringement) ¶¶ 42–58 ("COUNT I: INFRINGEMENT OF THE '940 PATENT"); ECF No. 75 (Qualcomm's Answer and Counterclaims) at 69–70. This alone precludes a Rule 54(b) final judgment as to the '940 Patent.

ParkerVision cites **no** authority—and Qualcomm has found none—for the proposition that a final judgment can be entered as to some, but not all, of the asserted claims within a single patent. *See* Mot. 6–8. To the contrary, "it is difficult to imagine a case in which subject matter is sufficiently related to be covered by a single patent, and yet sufficiently distinct as to warrant the grant of a motion for partial final judgment." *Donnelly*, 1996 WL 468452, at *3. The Federal Circuit and district courts that have addressed this issue have consistently *rejected* attempts like ParkerVision's to certify a partial final judgment for some claims or theories of a patent while continuing to litigate other claims or theories under the same patent in the district court.

For example, in *Donnelly v. Gentex*, a non-precedential decision, the Federal Circuit vacated and remanded the district court's Rule 54(b) certification where "the four claims of the '210 patent which are subject to the partial final judgment are not sufficiently distinct from the other claims of the same patent which remain before the district court." 1996 WL 468452, at *3. In doing so, the court reprimanded the parties for the "waste of resources

5

2998912

attending piecemeal review of related claims," characterizing the appeal as "*singularly inappropriate* to address the case in this fragmentary way." *Id.*

Likewise, in *TruePosition, Inc. v. Polaris Wireless, Inc.*, the district court denied a Rule 54(b) motion that sought partial final judgment for only two out of three asserted claims in a single patent. 2015 WL 887935, at *4 (D. Del. Mar. 3, 2015). The court held that the "three asserted claims must be viewed as part of a single action for relief based on infringement. Claims 113 and 114 have been resolved; Claim 98 has not. As a result, the single right of action for relief based on infringement of the '299 Patent is not final within the meaning of Rule 54(b)." *Id.*

And in *Smithkline Beecham*, the court denied a Rule 54(b) motion arising from an earlier summary judgment that had only resolved certain "product-by-process" claims without resolving "non-product-by-process" claims in the same patent (analogous to the present motion seeking judgment of the Receiver but not the Transmitter Claims). 2004 WL 634867, at *5. Reaffirming the principle that "an action alleging infringement of multiple claims asserted under a single patent asserts a single claim for purposes of Rule 54," the court found that there was no final judgment because only some but not all asserted claims were resolved. *Id.*

Here, ParkerVision chose to assert both Receiver and Transmitter Claims from the '940 Patent as its first cause of action, pursuing multiple

6

avenues to infringement of the same patent. ParkerVision cannot now seek
final judgment on only *some* of its asserted '940 Patent claims. Such a ruling
would not be an "ultimate disposition of an individual claim" and, therefore,
is beyond the relief this Court may grant under Rule 54(b). *Gore*, 975 F.2d at
862. The Court should deny ParkerVision's motion on this basis alone.[4]

**B.** **There are numerous "just reasons" to delay an appeal
from the Receiver Claims until final judgment of all
claims.**

Even setting aside the Motion's procedural deficiencies, ParkerVision's
proposed immediate appeal is inconsistent with the interests of efficient
judicial administration—it prevents this decade-old action from reaching a
trial and final judgment, while all but guaranteeing that the Federal Circuit
would hear at least two piecemeal appeals.

Far from offering any "sound reason to justify departure from the
general rule that all issues decided by the district court should be resolved in
a single appeal of a final judgment," *iLOR, LLC v. Google, Inc.*, 550 F.3d
1067, 1072 (Fed. Cir. 2008), ParkerVision's Motion only cites generally
applicable points, many of which weigh *against* certifying a final judgment
under Rule 54(b). Meanwhile, there are many "just reason[s to] delay" an

---

[4] ParkerVision did not ask the Court to certify only the '907 Patent cause of action
for immediate appeal. But even if it had requested such relief, there are even fewer
reasons to permit an immediate appeal of just the '907 Patent's claim construction.
The Federal Circuit would then be guaranteed to have to address the *same receiver*
technology twice—once for the '907 Patent's receiver claims, and a second time after
a trial on the '940 Patent's receiver claims. *See also infra* Section II.B.2.

7

appeal from the Receiver Claims and for this case to progress as planned towards a single final judgment of all claims.

### 1. The risk of a second trial cited by ParkerVision is inherent to *all* partially dispositive orders.

ParkerVision's lead argument is that an immediate appeal would avoid a potential additional trial. Mot. at 8–9. This is insufficient for Rule 54(b) certification. The risk and potential expense of an additional trial is not unique to this case—any partially dispositive order can be said to risk another trial if one assumes the judge committed legal error. As many courts have noted, "if Rule 54(b) certification required no more than that, every motion to dismiss or motion for summary judgment that succeeded in dismissing part of a complaint might spawn a piecemeal appeal." *Ebrahimi*, 114 F.3d at 168 (holding that, although early appellate review could eliminate the necessity for a second trial, "the district court's preference for pretrial appellate review of its dismissal decisions constitutes an improper basis for issuance of a partial final judgment"); *see also Morgan v. Bill Vann Co.*, 2013 WL 5445632, at *4 (S.D. Ala. Sept. 30, 2013) (rejecting considerations about the hardships of a second trial because such concerns "are *present in virtually every single case* in which the district court on summary judgment . . . dismisses some but not all of a plaintiff's claims against a particular defendant"); *Sure-Safe Indus., Inc. v. C & R Pier Mfg.*,

8

851 F. Supp. 1469, 1475 (S.D. Cal. 1993) ("[A]void[ing] the remote possibility of a second trial . . . is not sufficient . . . to justify a Rule 54(b) certification.). ParkerVision's interpretation of Rule 54(b) would be the exception that swallows the rule.

That this is a patent case does not change the law. The Federal Circuit is well aware that "[d]eterminations of claim construction made as an interlocutory matter by a district court are frequently determinative of either infringement or invalidity"; yet it nonetheless holds firm that "piecemeal litigation is as strictly precluded by the rule of finality for patent cases as it is for any other case." *Nystrom v. TREX Co.*, 339 F.3d 1347, 1350 (Fed. Cir. 2003). In other words, while the incentives to take an immediate appeal from an unfavorable claim construction and related summary judgment are well-known in patent litigation, the Federal Circuit does not allow such appeals in the ordinary course. To the contrary, the Federal Circuit has held that "the need for an immediate appeal" must "clearly outweigh[] the policy against piecemeal adjudication," and that it is appropriate to deny Rule 54(b) certification where the moving party "has failed to disclose any 'serious, perhaps irreparable, consequence' flowing from the partial summary judgment[.]" *Chaparral Commc'ns, Inc. v. Boman Indus., Inc.*, 798 F.2d 456, 459 (Fed. Cir. 1986).

9

2998912

**2. The substantial evidentiary overlap between the Receiver and Transmitter Claims weighs *against* piecemeal appeal.**

ParkerVision also cites the overlap in lay and expert witnesses involved in the Receiver and Transmitter Claims as supporting an immediate appeal, noting that these witnesses would need to provide duplicative testimony in a second trial. Mot. at 9–10. But, as previously discussed, the risks associated with a second trial are also true of all partially dispositive motions and not unique to this case. And contrary to ParkerVision's conclusion, courts considering Rule 54(b) motions have typically found that "similarity of facts and relief sought between the dismissed and remaining claims suggests that the interests of judicial administration ***would not be served*** by allowing an immediate appeal." *Sperry Assocs. Fed. Credit Union v. Space Coast Credit Union*, 2012 WL 4762128, at *2 (M.D. Fla. Oct. 5, 2012); *see also, e.g.*, *Indivior Inc. v. Dr. Reddy's Lab'ys S.A.*, 2020 WL 4932547, at *12 (D.N.J. Aug. 24, 2020) ("Where the adjudicated and unadjudicated claims share significant similarities, such as involving the same parties, the same legal issues, or the same evidence, *Rule 54(b) certification is disfavored.*"); *Ferring B.V. v. Actavis, Inc.*, 2014 WL 5419055, at *4 (D. Nev. Oct. 23, 2014) ("Under Rule 54(b), 'a similarity of legal or factual issues will *weigh heavily against entry of judgment*' . . . . In this case, the similarity of the factual and legal

10

2998912

issues convinces the Court that Rule 54(b) certification would be *inappropriate*."). ParkerVision's Motion turns this law on its head.

Furthermore, given the likelihood that one party or the other would appeal from the final judgment following a jury trial, ParkerVision's Motion would guarantee that there would be at least two appeals on the horizon. "The inevitability of such an appeal suggests that it is appropriate to *follow 'the general rule* that all issues decided by the district court should be resolved in a single appeal of a final judgment.'" *Lite-Netics, LLC v. Nu Tsai Capital LLC*, 767 F. Supp. 3d 895, 909 (D. Neb. Cir. 2025) (quoting *iLOR*, 550 F.3d at 1072). What is more, whether or not summary judgment of non-infringement of the Receiver Claims is upheld by the Federal Circuit, the second appeal will still involve at least validity and non-infringement of the '940 patent. Under these circumstances, the risk of multiplying the appellate dockets with related similar appeals (and potentially complicating matters for this Court down the line) far outweighs any purported need from ParkerVision for a separate and marginally earlier judgment on the Receiver Claims. *See, e.g., Maxell, Ltd. v. VIZIO, Inc.*, 2022 WL 2167459, at *3 (C.D. Cal. May 13, 2022) ("Even if the Federal Circuit reverses" partial summary judgment of invalidity, "any eventual appeal as to the validity and infringement of the remaining patents would return to the Federal Circuit.

11

The Court declines to subject the Federal Circuit to the potential for double review of this case.").

### 3. The equities support proceeding without delay towards a final adjudication on *all* claims.

In the Motion, ParkerVision remarks the "protracted history and complexity of this case weigh heavily in favor of finding no just reason to delay resolution." Mot. at 10–11. This observation is true, but it supports moving *forward* towards a final resolution of *all* claims, rather than engaging in a disruptive piecemeal appeal of only the Receiver Claims.

ParkerVision cannot plausibly submit that waiting for an appeal to the Federal Circuit under Rule 54(b) would be more expeditious than proceeding to a trial that the parties have known about and been preparing for since December 2024. Although the Court has not yet set a pretrial schedule, a Transmitter Claims–only trial would involve fewer issues and likely require fewer trial days, making it more manageable and easier to schedule than the trial the parties had expected at the time of the case management conference in December 2024.[5] In other words, any "delay" in the Receiver Claims' final judgment would be relatively brief as this case progresses towards a trial likely sometime in early 2026.

---

[5] ParkerVision was purportedly prepared to try this case as early as April 2025 (Mot. Ex. 1, at 4–5, ECF No. 811-1), which undermines its now alleged prejudice from proceeding to trial absent a stay of proceedings (*see* Mot. at 12–14).

By contrast, an immediate appeal to the Federal Circuit now would disrupt the trial preparation already underway to entertain a second appellate cycle (and likely a third after the eventual final judgment). Even under ParkerVision's optimistic best projections of an expedited appeal, the parties would be proceeding to trial in 2027 at the earliest. Mot. at 3; *cf. Lite-Netics*, 767 F. Supp. 3d at 911 ("[A] Rule 54(b) appeal before any trial and involving only claim construction and invalidity would likely take two years until an opinion is filed."). And if the appeal instead tracks a timeline closer to the previous one in this case (*i.e.*, nearly 30 months from the Notice of Appeal to the Federal Circuit's mandate, *compare* ECF No. 693 *with* ECF No. ECF No. 705), the parties would be returning to this Court and preparing for trial again sometime in 2028. These considerations must also account for the possibility that the Federal Circuit could (and likely would) affirm this Court's claim construction and prospective summary judgment orders, putting the parties and this Court right back to where they are today (*i.e.*, with a pending trial on validity, infringement, and damages), but multiple years later.[6]

---

[6] It goes without saying that Qualcomm firmly disagrees with the premise underlying ParkerVision's Motion about the Court's claim construction order. There is no reason to believe that the Federal Circuit would reverse this Court's well-reasoned claim construction order that relied on and frequently referred back to the Federal Circuit's express guidance in this very action.

2998912

ParkerVision also cites the "significant hardship" from the "burden of multiple trials," which it broadly claims would disproportionately burden smaller companies more so than larger companies. Mot. at 12. This argument rings hollow, given ParkerVision's ready willingness to incur the costs of an immediate and superfluous appeal. ParkerVision's complaints about the expenses of multiple trials are also incongruous with the fact that it is currently pursuing or engaged in *twelve* other patent proceedings simultaneously with *three trials* already scheduled. *See* Ex. A, Excerpts of ParkerVision, Inc., Quarterly Report (Form 10-Q) (May 13, 2025)), at 14–18 (https://www.sec.gov/Archives/edgar/data/914139/000143774925016431/prkr2 0250331_10q.htm).

Finally, ParkerVision suggests that a stay would not prejudice Qualcomm. Mot. at 13. Not so. The main events giving rise to this action occurred more than 25 years ago, and this action was filed more than 11 years ago. Under these circumstances, there is a substantial risk that Qualcomm's defense would be unduly prejudiced by further delay, including through the witnesses' unavailability and fading memories after 25 years. Multiple witnesses with personal knowledge have already since retired or otherwise departed from Qualcomm, many of whom are beyond this Court's subpoena power. *Cf.* Qualcomm's Mot. Amend Witness List, ECF No. 805. And although Qualcomm has endeavored to secure the current witnesses'

14

2998912

availability to testify at a trial in the upcoming months, it is far from guaranteed that they would remain available two to three years from now.

### C. If the Court were to enter Rule 54(b) final judgment, the Transmitter Claims should proceed to trial as scheduled.

Finally, even if the Court were inclined to grant ParkerVision's motion for Rule 54(b) certification and immediate appeal of the Receiver Claims, Qualcomm would request that this case nonetheless proceed towards a Transmitter Claims–only trial. For all the reasons addressed above at Section II.B., (1) Qualcomm would be unduly prejudiced by an extensive stay pending the Federal Circuit appeal; (2) ParkerVision would not likely sustain hardship from proceeding to a trial that it was purportedly ready to start three months ago; and (3) the Federal Circuit's opinion on the Receiver Claims' construction would not resolve the Transmitter Claims. Qualcomm requests that no stay be ordered if the Court were to grant ParkerVision's Rule 54(b) Motion.

## III. CONCLUSION

Based on the foregoing, Qualcomm requests that the Court deny ParkerVision's Motion for final judgment under Rule 54(b) and to stay the remaining Transmitter Claims pending appeal.

2998912

Respectfully submitted,

Dated: July 8, 2025

KEKER, VAN NEST & PETERS LLP

By: */s/ Robert A. Van Nest*

Robert A. Van Nest (special admission)
Matthew M. Werdegar (special admission)
Sophie Hood (special admission)
Anjali Srinivasan (special admission)
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188
rvannest@keker.com
mwerdegar@keker.com
shood@keker.com
asrinivasan@keker.com

**CARLTON FIELDS, P.A.**
Daniel C. Johnson
Florida Bar No. 522880
200 S. Orange Ave.
Suite 1000
Orlando, FL 32801
Telephone: (407) 849-0300
Facsimile: (407) 648-9099
djohnson@carltonfields.com

**COOLEY LLP**
Matthew Brigham (admitted pro hac vice)
Dena Chen (admitted pro hac vice)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 843-7400
Dchen@cooley.com
Mbrigham@cooley.com

**COOLEY LLP**
Eamonn Gardner (pro hac vice)
1144 15th Street, Suite 2300
Denver, CO 80202-2686
Telephone: (720) 566-4000
Facsimile: (720) 566-4099
Egardner@cooley.com

Attorneys for Defendants QUALCOMM INCORPORATED and QUALCOMM ATHEROS, INC.

16

2998912

<u>CERTIFICATE OF SERVICE</u>

I certify that on July 8, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM / ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM / ECF participants: none.

*/s/ Robert A. Van Nest*
Robert A. Van Nest

17

2998912

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PARKERVISION, INC.,**

        **Plaintiff,**

**v.**                                  **Case No: 6:14-cv-687-PGB-LHP**

**QUALCOMM INCORPORATED**
**and QUALCOMM ATHEROS,**
**INC.,**

        **Defendants.**

_____/

## <u>ORDER</u>

This cause is before the Court on Defendants Qualcomm Incorporated and Qualcomm Atheros, Inc.'s (collectively, "**Qualcomm**") Unopposed Motion for Partial Summary Judgment of Noninfringement and Dismissal Without Prejudice of Invalidity Counterclaims. (Doc. 809 (the "**Motion**")). Upon consideration, the Motion is due to be granted.

### I.    BACKGROUND

The relevant procedural history is outlined in the Court's Third Claim Construction Order and is incorporated herein. (Doc. 804, pp. 1–5). Suffice it to say that following remand by the Federal Circuit, this Court allowed the parties to submit claim construction briefs for a third time. (*Id.*). After the Court issued the Third Claim Construction Order, the parties filed the instant Motion. (Doc. 809). The unopposed Motion is accompanied by a Joint Stipulation of Noninfringement

of All Asserted Receiver Claims. (Doc. 809-1). The parties stipulate that there is no genuine issue of material fact that the Accused Products did not infringe asserted claims 1 and 10 of U.S. Patent 7,218,907 (the "'**907 Patent**") and claims 24 and 331 of U.S. Patent 6,091,940 (the "'**940 Patent**") (collectively, the "**Receiver Claims**"). (*Id*.). The parties further stipulate that the Court should dismiss without prejudice Qualcomm's counterclaims seeking declaratory judgment of invalidity of the Receiver Claims, subject to renewal should the Federal Circuit reverse the Court's claim construction order. (*Id*. at pp. 2–3).

## II.  DISCUSSION

The parties agree that their stipulation of noninfringement satisfies the requirements of Rule 56 and supports the entry of partial summary judgment in favor of Qualcomm as to ParkerVision's claims regarding infringement of the Receiver Claims and as to Qualcomm's corresponding counterclaims of noninfringement of those claims. *See* FED. R. CIV. P. 56(C)(1)(A); *Groove Digit., Inc. v. United Bank*, 825 F. App'x 852, 853 (Fed. Cir. 2020) (affirming summary judgment based upon joint stipulation of noninfringement); (Doc. 809, p. 2). The parties further agree that the entry of partial summary judgment will moot Qualcomm's counterclaims for invalidity. (*Id*. at p. 3); *see Nystrom v. TREX Co., Inc.*, 339 F.3d 1347, 1351, 1351 n.* (Fed. Cir. 2003) (holding the court may order dismissal of a counterclaim without prejudice—either with or without a finding that the counterclaim was moot—following the grant of summary judgment of non-infringement).

2

## III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Qualcomm's Unopposed Motion for Partial Summary Judgment of Noninfringement and Dismissal Without Prejudice of Invalidity Counterclaims (Doc. 809) is **GRANTED**.

2. The Court hereby enters partial summary judgment in favor of Defendants Qualcomm, Inc. and Qualcomm Atheros, Inc. as to claims 1 and 10 of the '907 Patent and claims 24 and 331 of the '940 Patent.

3. Defendants Qualcomm, Inc. and Qualcomm Atheros, Inc.'s Counterclaims as to the Receiver Claims are hereby **DISMISSED WITHOUT PREJUDICE**.[1]

**DONE AND ORDERED** in Orlando, Florida on August 21, 2025.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[1] The Stipulation and Motion for Partial Summary Judgment do not affect asserted claims 25, 26, 368, and 369 of the '940 Patent (the **"Transmitter Claims"**).

# EXHIBIT H

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court

## Middle District of Florida

**Notice of Electronic Filing**

The following transaction was entered on 8/21/2025 at 11:35 AM EDT and filed on 8/21/2025

| | |
|---|---|
| **Case Name:** | ParkerVision, Inc. v. QUALCOMM Incorporated et al |
| **Case Number:** | 6:14-cv-00687-PGB-LHP |
| **Filer:** | |
| **Document Number:** | 816(No document attached) |

**Docket Text:**
**ENDORSED ORDER re [814] Response in Opposition to ParkerVision's Motion for Rule 54(b) Final Judgment and to Stay Remaining Claims Pending Appeal. On or before September 4, 2025, ParkerVision may file a reply to the aforementioned [814] Response addressing Qualcomm's contention that a Final Judgment cannot be entered as to the Receiver Claims while the Transmitter Claims remain. Signed by Judge Paul G. Byron on 8/21/2025. (REG)**

**6:14-cv-00687-PGB-LHP Notice has been electronically mailed to:**

Stephen D. Busey      busey@smithhulsey.com, jmow@mckoolsmith.com, jodie-mow-mckool-smith-3495@ecf.pacerpro.com, jthomas@smithhulsey.com, khettinger@smithhulsey.com, tjackson@smithhulsey.com

Ava K. Doppelt      adoppelt@allendyer.com, clerk@allendyer.com, jgoldsmith@allendyer.com, mleavy@allendyer.com

Daniel C. Johnson      djohnson@carltonfields.com, atokarz@carltonfields.com, orlecf@cfdom.net

Brian R. Gilchrist      bgilchrist@allendyer.com, clerk@allendyer.com, mleavy@allendyer.com, shotz@allendyer.com

Courtney Kneece Grimm (Terminated)      courtney.grimm@claycountygov.com, mmoon@bedellfirm.com

George S. LeMieux      glemieux@gunster.com, ALevene@gunster.com

James Michael Matulis      Jim@MatulisLaw.com, FEB2011BARACCT@GMAIL.COM, jimmatulis@gmail.com

Marc E. Kasowitz      mkasowitz@kasowitz.com

Maria Helena Ruiz      mruiz@kasowitz.com, MChacon@kasowitz.com, autodocket@kasowitz.com, courtnotices@kasowitz.com, nrojas@kasowitz.com

Ryan Thomas Santurri      rsanturri@allendyer.com, clerk@allendyer.com, mleavy@allendyer.com

John R. Thomas      jthomas@smithhulsey.com, jperea@smithhulsey.com, khettinger@smithhulsey.com

Kevin L. Burgess      kburgess@caldwellcc.com, 1612557420@filings.docketbird.com, bdefeo@caldwellcc.com, mdelaney@caldwellcc.com, sross@caldwellcc.com

Joshua W. Budwin      jbudwin@mckoolsmith.com, ParkervisionIIECFNotifications@mckoolsmith.com, joshua-budwin-1390@ecf.pacerpro.com, kjackson@mckoolsmith.com, managingclerk@mckoolsmith.com

Richard Kamprath      rkamprath@mckoolsmith.com, dhughes@mckoolsmith.com

Stephen C. Neal (Terminated)      nealsc@cooley.com, wilsonla@cooley.com

Jeffrey Scott Karr      jkarr@cooley.com

Matthew Brigham      Mbrigham@cooley.com, efiling-notice@ecf.pacerpro.com, efilingnotice@cooley.com, tgibbs@cooley.com

Eamonn Gardner     egardner@cooley.com, efiling-notice@ecf.pacerpro.com, efilingnotice@cooley.com, megan-de-renzis-5493@ecf.pacerpro.com, mtrujillo@cooley.com

Erin C. Trenda     etrenda@cooley.com, kjones@cooley.com

Lam K. Nguyen     lnguyen@cooley.com

Stephen R. Smith     stephen.smith@cooley.com, mviguie@cooley.com

Dena Chen     dchen@cooley.com, patricia.russell@cooley.com

Jennifer Truelove     jtruelove@mckoolsmith.com

Frank Anthony Florio     fflorio@gunster.com, ya@kttlaw.com

Christine Michelle Woodin (Terminated)     cwoodin@mckoolsmith.com

R Mitch Verboncoeur     mverboncoeur@mckoolsmith.com

Matthew T. Cameron     mcameron@mckoolsmith.com

Priya B. Viswanath     pviswanath@cooley.com, patricia.russell@cooley.com

Jacob Abrams     jabrams@kasowitz.com, courtnotices@kasowitz.com

Robert A. Van Nest     rvannest@keker.com, efiling@keker.com, robert-van-nest-7869@ecf.pacerpro.com, scole@keker.com, susan-cole-9052@ecf.pacerpro.com

Matthew M. Werdegar     mwerdegar@keker.com, efiling@keker.com, matthew-werdegar-7074@ecf.pacerpro.com, maureen-stone-3437@ecf.pacerpro.com, mstone@keker.com

Anjali Srinivasan     asrinivasan@keker.com, anjali-srinivasan-8050@ecf.pacerpro.com, dawn-curran-3389@ecf.pacerpro.com, dcurran@keker.com, efiling@keker.com, mjackson@keker.com, vfujisawa@keker.com

Sophie Hood     shood@keker.com, efiling@keker.com, jbehlmer@keker.com

John B. Campbell     jcampbell@mckoolsmith.com

Ayana M. Rivers     arivers@mckoolsmith.com

Albert S. Mishaan     amishaan@kasowitz.com

**6:14-cv-00687-PGB-LHP Notice has been delivered by other means to:**

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PARKERVISION, INC.,

          Plaintiff,

     v.

QUALCOMM INCORPORATED, and
QUALCOMM ATHEROS, INC.,

          Defendants.

Case No. 6:14-cv-00687-PGB-LHP

**PARKERVISION'S REPLY IN SUPPORT OF ITS MOTION FOR RULE 54(b)
FINAL JUDGMENT AND TO STAY REMAINING CLAIMS PENDING
APPEAL (DKT. 811)**

**TABLE OF CONTENTS**

I.      Introduction .......................................................................................................1

II.     Argument............................................................................................................1

        A.      Patent Law Is Decided Patent-Claim-by-Claim, and Final
                Judgments Can Be Entered the Same Way.............................................1

        B.      Qualcomm's Authority Supports ParkerVision's Request for Rule
                54(b) Judgment as to the Receiver Claims. ...........................................3

        C.      If The Federal Circuit Disagrees and Finds Judgment Pursuant to
                Rule 54(b) is Improper, It Can (And Will) Remand the Case................7

III.    Conclusion .........................................................................................................7

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001) ........................................................................2

*Donnelly Corp. v. Gentex Corp.*,
    95 F.3d 1168, 1996 WL 468452 (Fed. Cir. 1996) ..............................................3

*Finisar Corp. v. DirecTV Grp., Inc.*,
    523 F.3d 1323 (Fed. Cir. 2008) ........................................................................2

*Houston Industries Inc. v. United States*,
    78 F.3d 564, 568 (Fed. Cir. 1996).................................................................3, 6

*Jones v. Hardy*,
    727 F.2d 1524 (Fed. Cir. 1984) ........................................................................2

*ParkerVision, Inc. v. Qualcomm Inc.*,
    116 F.4th 1345 (Fed. Cir. 2024) ............................................................... 1, 5, 7

*SmithKline Beecham Corp. v. Apotex Corp.*,
    Case Nos. 99-cv-4304, et. al., 2004 WL 634867 (E.D. Pa. Mar. 26, 2004).... 3, 6, 7

*Trovan, Ltd. v. Sokymat SA, Irori*,
    299 F.3d 1292 (Fed. Cir. 2002) ........................................................................2

*W.L. Gore & Associates, Inc. v. Garlock, Inc.*,
    721 F.2d 1540 (Fed. Cir. 1983) ........................................................................2

*Warner Lambert Co. v. Teva Pharms. USA, Inc.*,
    Case No. CIV. A. 99-922 DRD, 2007 WL 4233015 (D.N.J. Nov. 29, 2007) ........2

STATUTES

35 U.S.C. § 102 ...................................................................................................2, 4

OTHER AUTHORITIES

Fed. R. Civ. P. 54(b)..................................................................................... passim

## I.     INTRODUCTION

The Court directed ParkerVision to address Qualcomm's contention that Final Judgment under Rule 54(b) cannot be entered on the Receiver Claims while the Transmitter Claims remain (and are stayed). Dkt. 816. As the Order recently entered by the Court shows (Dkt. 815 at 3), patent law is decided on a patent-claim-by-patent-claim basis; each patent claim defines distinct rights, and courts routinely uphold some patent claims while rejecting others. Rule 54(b) exists for this reason—without it, final judgment on individual patent claims in multi-claim patents would be largely a moot point. But if judgment as to the Receiver Claims is entered pursuant to Rule 54(b), a single appeal could prevent duplicative trials, wasted testimony, and years of delay.

No trial is currently scheduled. If ParkerVision is wrong that final judgment under Rule 54(b) is not warranted here and the Federal Circuit remands the case, Qualcomm suffers no prejudice.[1] If ParkerVision is right, denying judgment forces the parties and the Court into costly, unnecessary duplicative proceedings. The Court should enter judgment on the Receiver Claims and stay the Transmitter Claims.

## II.     ARGUMENT

### A.     Patent Law Is Decided Patent-Claim-by-Claim, and Final Judgments Can Be Entered the Same Way.

It is fundamental patent law that "each [patent] claim must be considered as

---

[1] If the Federal Circuit disagrees with the entry of judgment under Rule 54(b), and as it did in the prior appeal, it will remand, leaving the case unchanged. *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1354 (Fed. Cir. 2024) ("[W]e determined *sua sponte* that we lacked jurisdiction over the appeal because Qualcomm's counterclaims for invalidity remained unadjudicated and, consequently, there was no final judgment.").

defining a separate invention." *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984). This principle is not a narrow doctrine but a cornerstone of how courts approach patent adjudication. This Court has followed the Federal Circuit's understanding. The recent judgment that the Court entered at the parties' joint request does so on a patent-claim-by-patent-claim basis, and specifies which other patent claims are ***not*** included in that judgment. Dkt. 815 at 3 ("The Court hereby enters partial summary judgment . . . as to claims 1 and 10 of the '907 Patent and claims 24 and 331 of the '940 Patent."); *id.* at n.1 ("The Stipulation and Motion for Partial Summary Judgment do not affect asserted claims 25, 26, 368, and 369 of the '940 Patent (the 'Transmitter Claims').").

Every major patent issue—infringement[2], validity[3], enablement[4], and inventorship[5]—is decided on a patent-claim-by-patent-claim basis. That structure confirms that there is nothing unusual or improper about entering Final Judgment as to certain patent claims while other patent claims are stayed. Rule 54(b) is designed

---

[2] *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351(Fed. Cir. 2001) ("Of course, whether performed at the preliminary injunction stage or at some later stage in the course of a particular case, infringement and validity analyses must be performed on a claim-by-claim basis."); *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1559 (Fed. Cir. 1983) ("infringement must be decided with respect to each asserted claim as a separate entity.").

[3] *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008) ("Although § 102 refers to 'the invention' generally, the anticipation inquiry proceeds on a claim-by-claim basis.").

[4] *See Warner Lambert Co. v. Teva Pharms. USA, Inc.*, Case No. CIV. A. 99-922 DRD, 2007 WL 4233015, at *2 (D.N.J. Nov. 29, 2007) ("In analyzing enablement, each asserted claim must be analyzed independently.").

[5] *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302 (Fed. Cir. 2002) ("inventorship is determined on a claim-by-claim basis.").

for this situation and fits patent law's patent-claim-by-patent-claim framework.

At bottom, both substantive patent law and procedural doctrine compel the same result: patent rights are adjudicated on a claim-by-claim basis, and Rule 54(b) provides the procedural mechanism to give effect to that structure at the judgment stage. To hold otherwise—that no final judgment could ever be entered until every claim of a patent was fully resolved—would make Rule 54(b) essentially unworkable in patent cases. Multi-claim patents are the norm, and courts routinely uphold some claims while rejecting others. The Court should therefore enter final judgment on the Receiver Claims while staying the Transmitter Claims, precisely as Rule 54(b) permits.

### B. Qualcomm's Authority Supports ParkerVision's Request for Rule 54(b) Judgment as to the Receiver Claims.

Each of the cases Qualcomm cites—*Donnelly*, *Houston*, and *SmithKline*—arose in contexts where the asserted claims were legally or factually inseparable, or where the court viewed the right to relief as a single, indivisible cause of action. Response at 3-7. Far from barring Rule 54(b) judgment, these precedents underscore why such relief is proper here.

Throughout its Response, Qualcomm invokes the nearly 30-year old *Donnelly Corp. v. Gentex Corp.*, 95 F.3d 1168, 1996 WL 468452, at *3 (Fed. Cir. 1996) case, for the broad proposition that "it is difficult to imagine a case in which subject matter is sufficiently related to be covered by a single patent, and yet sufficiently distinct as to warrant the grant of a motion for partial final judgment." But that statement must be understood in the context of *Donnelly* itself. There, the Federal Circuit emphasized that

3

the patent claims at-issue were not "sufficiently distinct" because all of them rose and fell together on a single, overlapping factual predicate—the on-sale bar under § 102(b). *Id*. Every claim of the '210 patent, whether originally asserted or newly added, was invalidated for the same reason: the same commercial activity and prosecution history gave rise to a uniform § 102(b) on-sale bar defense that applied to all the patent claims at-issue. *Id*. This is why it did not make sense, in *Donnelly*, to separate some patent claims from others—because all were equally impacted by the same on-sale bar issue.

As the Federal Circuit explained in *Donnelly*, "the validity of all the '210 claims in the face of the asserted on-sale bar defense [was] factually intertwined with the history of the '210 patent," and that overlap extended to related patents as well. *Id*. In short, because the on-sale bar applied equally to all the patent claims at-issue, *Donnelly* presented the scenario where an appeal as to some patent claims, but not others, would have required the Federal Circuit to revisit the same factual record in multiple stages (on-sale bar as to some claims first, followed by the same on-sale bar analysis as to other claims later), making Rule 54(b) judgment inappropriate.

Here, by contrast, the Receiver Claims and the Transmitter Claims are uniquely distinct from each other, and do not present the same overlap present in *Donnelly*— that is, no single issue (whether related to claim construction, infringement, validity or damages) runs equally through the Receiver Claims as well as the Transmitter Claims. This is reflected by the separate and different claim language, and the fact that these two different sets of claims have consistently been treated as distinct by the parties and the courts. Unlike *Donnelly*, an appeal of the Court's claim construction order

impacting the Receiver Claims only (but not the Transmitter Claims) will *not* require the appellate court to revisit the same issue (the correct claim construction of the Receiver Claims) in multiple appeals.

The Federal Circuit itself recognized the difference between the Receiver Claims and the Transmitter Claims in the prior appeal, when it vacated the summary judgment on the Receiver Claims while separately acknowledging the still-pending Transmitter Claims. *ParkerVision*, 116 F.4th at 1351, 1362, 1364, n.1 ("The "transmitter claims," according to the district court, include claims 22 and 25 of the '940 patent and two claims of a patent that is not relevant to the issues raised in this appeal."). Throughout this case, the parties litigated the Receiver and Transmitter Claims independently of one another—through separate claim construction disputes, expert analyses for infringement and validity, and distinct damages models. *See, e.g.*, Dkt. 499-8 (Gardner Decl. Ex. 24) (Bone Damages Report) ¶ 595 (assigning different monetary values to the Receiver and Transmitter Claims).

Notably, Qualcomm argued—and the Court accepted—that the Receiver Claims are sufficiently similar to the claims in *ParkerVision v. Qualcomm I* to warrant application of collateral estoppel. *See, e.g.*, *ParkerVision*, 116 F.4th at 1355-1360. Indeed, the Court entered judgment against ParkerVision on collateral estoppel of the Receiver Claims leading to the prior appeal. *See id*. But crucially, and because the Transmitter Claims are distinct from the Receiver Claims, Qualcomm never contended that collateral estoppel should apply to the Transmitter Claims. The Court's prior judgment against ParkerVision tracks that framing: it adjudicated only the

Receiver Claims on collateral estoppel grounds, implicitly acknowledging that the Transmitter Claims present separate and distinct issues.

*Donnelly* does not foreclose Rule 54(b) relief here; it underscores why such relief is appropriate. *Donnelly* illustrates the limiting case where a set of patent claims are so entangled by a single factual issue (on-sale bar applying equally to all claims) that separate appeals would be duplicative, and would require the appeals court to address the same issue (on-sale bar), based on the same facts, in multiple appeals. Here, as the prior procedural history makes abundantly clear, the Receiver and Transmitter Claims are fully severable and "sufficiently distinct as to warrant the grant of a motion for partial final judgment." *Donnelly*, 1996 WL 468452, at *3. *Donnelly* therefore supports the entry of a Rule 54(b) judgment in this case.

Qualcomm's other authority is inapposite. For example, *Houston Industries Inc. v. United States* was a tax case where the Federal Circuit held that Rule 54(b) certification was improper because the ruling decided only part of a taxpayer's liability for a single tax year. 78 F.3d 564, 568 (Fed. Cir. 1996). The court reasoned that annual tax liability is a "single, unified cause of action" that cannot be split into separate claims. *Id*. Apart from the fact that *Houston* is not related to patent law, the Transmitter and Receiver Claims are not a "single, unified cause of action" like the tax issues there. *Id*. Each of the Transmitter and Receiver Claims are their own "separate inventions," have separate damages, and separate infringement and invalidity theories. *Jones*, 727 F.2d at 1528.

And in *SmithKline Beecham Corp. v. Apotex Corp.*, 2004 WL 634867 (E.D. Pa.

Mar. 26, 2004), an out-of-district case, the court likewise denied Rule 54(b) relief because it concluded "claims cannot be separate unless separate recovery is possible on each." *Id*. at \*4. That reasoning only reinforces the distinction here: the Receiver and Transmitter Claims *do* allow for separate recoveries—and each presents different infringement theories and different damages models—so Rule 54(b) certification is proper even if some of the claims are contained in the same patent.

### C. If The Federal Circuit Disagrees and Finds Judgment Pursuant to Rule 54(b) is Improper, It Can (And Will) Remand the Case.

As explained in ParkerVision's motion, the equities weigh heavily in favor of entering final judgment as to the Receiver Claims. Mot. at 10-11. If the Federal Circuit does not agree it is proper at this stage, it will remand the case, and the parties will be in the same position they are in today. In the prior appeal, the Federal Circuit determined *sua sponte* that the procedural posture was not correct and remanded the case. *ParkerVision*, 116 F.4th at 1354.

But if this case proceeds only on the Transmitter Claims (in light of the Order granting judgment against ParkerVision on the Receiver Claims), and the Federal Circuit agrees with ParkerVision, the result would be far worse: the parties, the Court, and the witnesses would all have to undergo a second trial years later. That outcome would result in unnecessary burdens, wasted resources, and duplicative proceedings.

### III. CONCLUSION

The Court should grant ParkerVision's Motion and enter a Rule 54(b) judgement while exercising its discretionary power to stay the remaining claims.

September 4, 2025

Respectfully submitted,

By: /s/ Ava K. Doppelt

Ava K. Doppelt
Allen, Dyer, Doppelt, & Gilchrist, PA
Fla. Bar No. 393738
255 S. Orange Ave – Ste. 1401
Orlando, FL 320801
Telephone: (407) 841-2330
Facsimile: (407) 481-2343
adoppelt@allendyer.com


McKool Smith, P.C.
By: /s/ Joshua W. Budwin
Joshua W. Budwin
Texas State Bar No. 24050347
John B. Campbell, Jr. (*pro hac vice*)
Texas State Bar No. 24036314
R. Mitch Verboncoeur (*pro hac vice*)
Texas State Bar No. 24105732
Matt Cameron (*pro hac vice*)
Texas State Bar No 240997451
303 Colorado Street, Suite 2100
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 592-8744
jbudwin@McKoolSmith.com
jcampbell@McKoolSmith.com
mverboncoeur@McKoolSmith.com
mcameron@McKoolSmith.com

Kevin L. Burgess (*pro hac vice*)
Texas State Bar No. 24006927
Jennifer Truelove (*pro hac vice*)
Texas State Bar No. 24012906
104 East Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

8

kburgess@McKoolSmith.com
jtruelove@McKoolSmith.com

Ayana M. Rivers (*pro hac vice*)
New York State Bar No. 2956209
1301 Avenue of the Americas,
32ndFloor
New York, NY 10019
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
arivers@McKoolSmith.com

*Attorneys for Plaintiff ParkerVision, Inc.*

9

## CERTIFICATE OF SERVICE

I certify that on September 4, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non- CM/ECF participants: none.

*/s/ Joshua W. Budwin*
Joshua W. Budwin

## RULE 3.01(g) CERTIFICATION

The undersigned certifies that the Court ordered that on or before September 4, 2025, ParkerVision was permitted to file a reply to Qualcomm's Response in Opposition to ParkerVision's Motion for Rule 54(b) Final Judgment and to Stay Remaining Claims Pending Appeal.

*/s/ Joshua W. Budwin*
Joshua W. Budwin

# EXHIBIT J

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PARKERVISION, INC.,**

        **Plaintiff,**

**v.**                                                           **Case No: 6:14-cv-687-PGB-LHP**

**QUALCOMM INCORPORATED**
**and QUALCOMM ATHEROS,**
**INC.,**

        **Defendants.**

                                /

## ORDER

This cause is before the Court on Plaintiff's Motion to Enter Stipulated Final Judgment of Noninfringement of the Receiver Claims under Rule 54(b) and to Sever and Stay the Remaining (Transmitter) Claims Pending Appeal of the Court's Claim-Construction Order. (Doc. 811 (the "**Motion**")). The Defendants Qualcomm Inc. and Qualcomm Atheros, Inc. (collectively, "**Qualcomm**") filed a Response (Doc. 814), and the Plaintiff submitted a Reply. (Doc. 818). Upon consideration, the Plaintiff's Motion is granted.

## I.     BACKGROUND

The relevant procedural history is outlined in the Court's Third Claim Construction Order and is incorporated herein. (Doc. 804, pp. 1–5). Following remand from the Federal Circuit, the Court invited the parties to submit claim construction briefs on claim 1 of the '907 patent and claims 24 and 331 of the '940

patent. (Doc. 794). Thereafter, the Court issued its Third Claim Construction Order. (Doc. 804). The Court's construction of the disputed claim terms prompted the parties to jointly move for entry of partial summary judgment of noninfringement of claims 1 and 10 of U.S. Patent 7,218,907 (the "**'907 Patent**") and claims 24 and 331 of U.S. Patent 6,091,940 (the "**'940 Patent**") (collectively, the "**Receiver Claims**"). (Doc. 809). The parties further moved the Court to dismiss without prejudice, subject to renewal if there is a reversal or remand, Qualcomm's 2d Counterclaim for Invalidity as it relates to claims 24 and 331 of the '940 Patent and Qualcomm's 16th Counterclaim for Invalidity of the '907 Patent. (*Id*.). The Court granted the motion and entered partial summary judgment in favor of Defendants Qualcomm Inc. and Qualcomm Atheros, Inc. on the Receiver Claims, dismissing without prejudice Qualcomm's counterclaims seeking a declaratory judgment of invalidity. Now, the Plaintiff moves the Court to enter final judgment under Federal Rule of Civil Procedure 54(b), so it may seek appellate review of the Court's Third Claim Construction Order. Plaintiff also moves for a stay of the remaining claims.

## II.    LEGAL STANDARD

"For Rule 54(b) to apply, three prerequisites must be met: '(1) multiple claims for relief or multiple parties must be involved; (2) at least one claim or the rights and liabilities of at least one party must be finally decided; and (3) the district court must find that there is no just reason for delaying an appeal.'" *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F. App'x 895, 897 (Fed. Cir.

2

2020)[1] (quoting *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 841 F.3d 1334, 1347 (Fed. Cir. 2016)). Thus, "the court must enter a 'final' judgment that 'disposes entirely of a separable claim or dismisses a party entirely.'" *Vazquez-Klecha v. Bickerstaff*, No. 22-10385, 2023 WL 5321308, at *2 (11th Cir. Aug. 18, 2023) (quoting *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777, 779 (11th Cir. 2007)). And the court must determine there is "no just reason for delay." *Id.* "Because Rule 54(b) certifications depart from the 'historic federal policy against piecemeal appeals' ' . . . certifications must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Id.* (citation omitted).

## III. DISCUSSION

"Within the meaning of Rule 54(b), the definition of a 'claim' is not clear." *TruePosition, Inc. v. Polaris Wireless, Inc.*, No. 12-646-RGA-MPT, 2015 WL 887935, at *3 (D. Del. Mar. 3, 2015). The court in *TruePosition* reasoned that "if aspects of a single claim of patent infringement remain and are not resolved, then that claim cannot be certified as final under Rule 54(b)." *Id.* at *4. The question is whether claims 25, 26, 368, and 369 of the '940 Patent (collectively, the **"Transmitter Claims"**) fall within the definition of an aspect of a single claim of

---

[1]   "Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018).

3

patent infringement. ParkerVision argues that the Transmitter Claims are separate and distinct from the Receiver Claims, noting that the Federal Circuit has treated them as such. (Doc. 818, p. 5 (quoting *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1351, 1362, 1364 n.1 (Fed. Cir. 2024))). ParkerVision further asserts that the Transmitter Claims present different infringement theories and different damages models. (*Id.* at p. 9); *see Smithkline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304, 2004 WL 634867, at *4 (E.D. Pa. Mar. 26, 2004) ("[C]laims cannot be separate unless separate recovery is possible on each.")). The Court agrees with ParkerVision that the Transmitter Claims are separate from the Receiver Claims, such that judgment pursuant to Rule 54(b) is possible.

The next question is whether departing from the "historic federal policy against piecemeal appeals" is appropriate here. *Vazquez-Klecha*, 2023 WL 5321308, at *2 (citation omitted). This case is unique not only in its duration but also because the Federal Circuit remanded with instructions for this Court to conduct a Third Claim Construction long after the deadline set by the Court had passed and without either party requesting construction of the terms identified by the Circuit Court. *See ParkerVision*, 116 F.4th at 1357, 1364. The Court has now construed the claims at issue, and ParkerVision argues that if the Federal Circuit disagrees with the Court's construction, the parties will face two trials: one on the remaining Transmitter Claims and, after an appeal, a separate trial on the Receiver Claims. (Doc. 818, p. 10). ParkerVision also asserts that the Federal Circuit can quickly dismiss the appeal if it determines the Receiver Claims and Transmitter

Claims constitute a single cause of action such that certification is improper. (*Id.* at p. 1 n.1). ParkerVision is right on both points.

Certification under Rule 54(b) should issue "[o]nly in rare, unusually harsh circumstances where delaying appeal would work hardship or injustice." *Morgan v. Bill Vann Co., Inc.*, No. 11-0535-WS-B, 2013 WL 5445632, at *4 (S.D. Ala. Sept. 30, 2013). The parties have been embroiled in costly litigation in this Court and before the U.S. International Trade Commission (Doc. 250) since 2014. Three Claim Construction Orders have been issued, with the most recent having resulted from the Federal Circuit's initiative. The Federal Circuit is now intimately familiar with this case and is well-positioned to promptly review the Court's construction of claims that it identified. The harm caused to both parties by proceeding to trial on the Transmitter Claims without the benefit of appellate review of the Receiver Claims is significant. And this Court has already expended more time and resources on this one case than is justifiable. The Federal Circuit felt it was necessary for claim terms to be construed long after the deadline set by this Court, so it should have the opportunity to review that construction now—not later.

## IV. CONCLUSION

For these reasons, it is **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion to Enter Stipulated Final Judgment of Noninfringement of the Receiver Claims under Rule 54(b) and to Sever and Stay the Remaining (Transmitter) Claims Pending Appeal of the Court's Claim-Construction Order (Doc. 811) is **GRANTED**.

5

2.  Final Judgment pursuant to FED. R. CIV. P. 54(b) of noninfringement on the Receiver Claims[2] (*see* Doc. 815) is entered in favor of Defendants Qualcomm Inc. and Qualcomm Atheros, Inc.

3.  All other claims are **SEVERED** and **STAYED** pending appeal.

4.  The parties shall provide written status reports every ninety (90) days hereafter or upon the occurrence of any event that may result in the stay being lifted.

5.  The Clerk is **DIRECTED** to administratively close the case.

**DONE AND ORDERED** in Orlando, Florida on October 2, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[2]  Claims 1 and 10 of U.S. Patent 7,218,907 and claims 24 and 331 of U.S. Patent 6,091,940.

6